(No. 76405.—

THE PEOPLE *ex rel.* MICHAEL J. WALLER, Appellee, v. 1989 FORD F350 TRUCK (Katsumi Kusumoto, Appellant).

*Opinion filed September 29, 1994.*

Michael S. Danian, of Waukegan, for appellant.

Roland W. Burris, Attorney General, of Springfield, and Michael J. Waller, State's Attorney, of Waukegan (Norbert J. Goetten, William L. Browers and Lisa Anne Hoffman, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

After police found cocaine in Katsumi Kusumoto's pants pocket when Kusumoto was arrested on a traffic charge, the State brought a complaint in the circuit court of Lake County for forfeiture of Kusumoto's truck and $55.99 in cash belonging to Kusumoto. The State brought the forfeiture proceeding pursuant to section 505 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1991, ch. 56½, par. 1505), alleging that the truck and cash were used to transport and facilitate the possession of cocaine that Kusumoto was carrying. After a hearing, the trial judge found for the State. On appeal, the appellate court affirmed. This court granted claimant's petition for leave to appeal (134 Ill. 2d R. 315).

## I. BACKGROUND

On February 19, 1992, at about 2:17 a.m., Officer Sylvester Hampton of the Zion police department stopped Katsumi Kusumoto for speeding. After observing and talking to Kusumoto, Hampton placed Kusumoto under arrest for driving under the influence of alcohol.

At the Zion police station, Kusumoto emptied his pockets pursuant to a routine custodial search. Removed from the right front pocket of his pants were a paper "sno-seal" and a folded $1 bill, each of which contained a white substance that later tested positive for cocaine. Also removed from the same pocket was $55.99 in United States currency. Kusumoto later told Officer Hampton that a friend, whose name Kusumoto did not know, gave Kusumoto the cocaine at a bar in North Chicago.

Defendant was criminally prosecuted for possession of cocaine. He was sentenced to 18 months' probation and fined $500. He also paid court and probation costs of $817, plus $30 as the value of the cocaine.

Subsequently, the State brought a forfeiture proceeding pursuant to section 505 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1991, ch. $56^1/2$, par. 1505), alleging that the truck and cash were used to transport and facilitate the possession of cocaine that Kusumoto was carrying in his pants pocket when he was arrested. The State's complaint also alleged that the $55.99 in cash on Kusumoto's person facilitated the possession of the cocaine.

At the hearing, Zion police detective Kevin Leslie testified that, at about 8:55 a.m. on February 19, 1992, he drove Kusumoto from jail to court for a bond hearing. On the way to the bond hearing, Leslie struck up a conversation with Kusumoto. At some point in the conversation, Leslie asked Kusumoto what an "old guy" like him was doing with cocaine. According to Leslie, Kusumoto replied that he had purchased it for an employee and not for his own use.

Kusumoto testified to a somewhat different version of his conversation with Leslie. He stated that before Leslie asked him what he was doing with cocaine, the officer told Kusumoto that Kusumoto would not get his truck back. When Kusumoto asked to call his lawyer, Leslie told him he could not "hire that attorney." Leslie then asked Kusumoto what an "old guy" like him was doing with cocaine. Kusumoto replied that he had just bought it in a bar. According to Kusumoto, he never told Leslie that the cocaine was for an employee. Kusumoto testified that he talked to Leslie after Leslie questioned him, prior to which time Leslie told him not to run away or Leslie would shoot him.

After argument, the trial judge found for the State. The judge explained that he believed Officer Leslie's testimony that Kusumoto told Leslie that Kusumoto was transporting the cocaine for an employee.

The trial judge found that the 1989 Ford truck

facilitated both the transportation and possession of the cocaine found on Kusumoto's person. The judge stated that, even without the controverted statement that Kusumoto was transporting the cocaine to another person, the evidence supported the forfeiture of the truck. The judge explained that the mere presence of the controlled substance on the person of the driver was sufficient to subject a vehicle to forfeiture. Also, it could be presumed that the $55.99 in cash, which was recovered from the same pocket as the cocaine, was used to facilitate the possession of the cocaine.

On appeal, Kusumoto argued that (1) Officer Leslie should not have been allowed to testify that Kusumoto stated the cocaine was for an employee because any such statement was made without proper *Miranda* warnings; and (2) there was insufficient evidence that the truck in which he was riding or the money he was carrying facilitated a violation of the Illinois Controlled Substances Act.

In an unpublished order, the appellate court affirmed (No. 2—92—0946 (unpublished order under Supreme Court Rule 23)). Initially, that court held that the trial court did not err in refusing to suppress Kusumoto's statement to Leslie. The panel noted that as a forfeiture proceeding is a civil proceeding *in rem*, it does not require the suppression of statements made in violation of an intervenor's *Miranda* rights.

Next, the appellate court concluded that the trial court properly ordered the forfeiture of the truck. The appellate court noted that the trial court resolved a credibility contest in favor of Officer Leslie's testimony that Kusumoto admitted he was transporting the cocaine from North Chicago to an employee. The appellate court found that under the circumstances, the trial court could have properly concluded that the vehicle was used, or intended to be used, to "transport" or to facilitate the transportation of the cocaine.

The appellate court specifically declined to decide whether the mere presence of the cocaine on the driver's person was sufficient to support a finding that the truck was used to facilitate the possession of the cocaine, a question which this court has answered in the negative this term. See *People v. 1986 White Mazda Pickup Truck* (1994), 162 Ill. 2d 67.

Finally, the appellate court held that the trial court properly found that the $55.99 in cash was subject to forfeiture, as there was a statutory presumption that currency found in such close proximity to a controlled substance is subject to forfeiture. The appellate court held that the trial court's finding that Kusumoto introduced no credible evidence sufficient to rebut this presumption was not against the manifest weight of the evidence.

## II. ARGUMENTS TO THIS COURT

### A. Sufficiency of the Evidence

On appeal to this court, defendant initially argues that because he was not in his vehicle at the time he was arrested for possession of a controlled substance, his truck was not subject to forfeiture. He argues that the link between the cocaine and his vehicle was broken when he was transported by the police to the police station where the cocaine was discovered.

We find this argument patently without merit. The pertinent part of the Controlled Substances Act provides:

"(a) The following are subject to forfeiture:

(1) all substances which have been manufactured, distributed, dispensed, or possessed in violation of this Act;

(2) all raw materials, products and equipment of any kind which are used, or intended for use in manufacturing, distributing, dispensing, administering or possessing any substance in violation of this Act;

(3) all conveyances, including aircraft, vehicles or

vessels, which are used, or intended for use, to transport, or in any manner to *facilitate* the transportation, sale, receipt, possession, or concealment of property described in paragraphs (1) and (2) ***." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 56$^1$/2, par. 1505(a).)

As this court has previously determined, the key term in the forfeiture statute is "facilitate," which means "to make easier or less difficult." (*People v. 1988 Mercury Cougar* (1992), 154 Ill. 2d 27; *People v. 1946 Buick* (1989), 127 Ill. 2d 374.) Thus, the only question to be asked is whether the use of the vehicle facilitated the possession or transportation of the controlled substance. Whether the cocaine hidden on the defendant was discovered by police while the defendant was in the vehicle or not is irrelevant, so long as it can be proved that the vehicle was being used to facilitate the transportation or possession of the controlled substance. Contrary to defendant's contention, the fact that the cocaine was not discovered until a custodial search was conducted at the station does not destroy the nexus between the cocaine and the use of the vehicle.

With respect to the $55.99 in cash, defendant argues that there was no evidence to indicate that this was anything more than an amount ordinarily carried on his person for unexpected needs while away from his home or business.

The State, however, points out that there is a statutory presumption that currency found in such close proximity to a controlled substance is subject to forfeiture, and argues that defendant failed to overcome this presumption. (Ill. Rev. Stat. 1991, ch. 56$^1$/2, par. 1677(1).) The trial court below agreed with the State and found that Kusumoto introduced no credible evidence sufficient to rebut this presumption.

We disagree with the trial court finding. Contrary to the State's contention, we feel that the defendant has sufficiently rebutted the presumption related to mere

proximity. The amount of money in question here was insignificant, and defendant's contention that this was an amount ordinarily carried on his person is credible. The fact that the cash was in close proximity to the drugs bears less presumptive weight in this case than in cases where large amounts of cash are kept in the same or nearby safe as illicit drugs. (See, *e.g.*, *People v. $52,204.00 United States Currency* (1993), 252 Ill. App. 3d 778.) In those cases, it is reasonable to infer from the large amounts of cash and the proximity of the drugs that there is an integral connection between the two. In the case at bar, however, what is involved is pocket money and it is more than reasonable that it would be found in a person's pocket. We find that defendant has overcome the statutory presumption, and because the State has not introduced any evidence indicating that the money is related to any illicit transaction, we hereby reverse the order of forfeiture with respect to the $55.99 in cash.

Defendant next contends that the trial court's determination that his truck facilitated the transportation of a controlled substance was erroneous. He bases this argument on his continued objection over Detective Leslie's testimony that defendant had told Leslie the cocaine was for an employee. Defendant argues that the conversation between him and Officer Leslie constituted custodial interrogation and necessitated *Miranda* warnings.

As noted above, the appellate court held that the trial court did not err in permitting Officer Leslie's testimony as to the defendant's statements. That court found that as the forfeiture action constituted an *in rem* civil proceeding, it did not require suppression of statements made in violation of *Miranda*.

While probably correct at the time of its decision, the lower courts' equation of the instant forfeiture

proceedings with ordinary civil proceedings has since been cast into doubt. Recently, in *Austin v. United States* (1993), 509 U.S. 602, 125 L. Ed. 2d 488, 113 S. Ct. 2801, the Supreme Court reviewed the history of civil forfeiture actions and found them to be a form of punishment subject to the limitations of the eighth amendment's excessive fines clause. With this decision, it is now an open question whether the protections of *Miranda* extend to a claimant in a forfeiture action.

Even assuming that *Miranda* does apply to forfeiture actions, however, defendant could not prevail on his claim. The voluntariness of subsequent statements is not compromised by failure to repeat the warning during each conversation defendant has with the police. (*People v. Hill* (1968), 39 Ill. 2d 125, 131-32.) In this case, defendant was properly advised of his *Miranda* warnings at the time of arrest. Approximately five hours later, while defendant was being transported for a bond hearing, the conversation in question took place. We cannot find that the passage of this relatively short amount of time required the officer to re-advise defendant of his rights. Upon our review of the record, we cannot say that the trial court erred in considering Officer Leslie's testimony.

Defendant next contends that even if the evidence was admissible under *Miranda*, the evidence did not justify the forfeiture of the defendant's vehicle, as the State failed to meet its burden of proof. We find, however, that the trial court could have properly believed Detective Leslie's testimony that defendant told him of his intent to deliver the cocaine to an employee. Thus, the trial court could have properly concluded that the preponderance of the evidence demonstrated that defendant's truck was used in facilitating the transportation of cocaine. Accordingly, the trial court's decision was not against the manifest weight of the evidence.

## B. Eighth Amendment Analysis

Defendant next argues that the trial court erred in ordering the forfeiture of his property without first determining whether or not the forfeiture violated the excessive fines clause of the United States Constitution. In support of his argument, he cites the United States Supreme Court decision in *Austin v. United States* (1993), 509 U.S. 602, 125 L. Ed. 2d 488, 113 S. Ct. 2801. The State acknowledges that *Austin* controls, but argues that the forfeiture in this case was not excessive.

In *Austin,* the Supreme Court established that forfeitures under the Federal statutory provisions for forfeiture of real and personal property (21 U.S.C. §§ 88(a)(4), (a)(7) (1988)) constitute monetary punishment and are subject to the limitations of the excessive fines clause of the eighth amendment. (*Austin,* 509 U.S. at 619-22, 125 L. Ed. 2d at 503-06, 113 S. Ct. at 2810-12.) The Federal provisions are very similar to the Illinois statute and provide for the forfeiture of:

"(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances, their raw materials, and equipment used in their manufacture and distribution];

* * *

(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment ***." 21 U.S.C. §§ 881(a)(4), (a)(7) (1988).

Although the Supreme Court held that such *in rem* forfeitures are subject to the limitations imposed by the eighth amendment, the Court declined to establish a test for determining when a forfeiture is constitutionally excessive. The Court stated:

"Austin asks that we establish a multifactor test for determining whether a forfeiture is constitutionally 'excessive.' \*\*\* We decline that invitation. \*\*\* Prudence dictates that we allow the lower courts to consider that question in the first instance."

While the majority refused to establish a test, in his concurrence, Justice Scalia suggested that the sole measure of an *in rem* forfeiture's excessiveness is the nexus between the forfeited property and the offense. Under Justice Scalia's analysis, the only relevant inquiry is whether the confiscated property has a close enough relationship to the offense. *Austin*, 509 U.S. at 627-28, 125 L. Ed. 2d at 508-09, 113 S. Ct. at 2814-15 (Scalia, J., concurring).

Justice Scalia, however, appears to be the only one on the high Court with this particular view. In a footnote, the majority hinted that it encouraged the development of a multifactor test. The majority stated:

"Justice Scalia suggests that the sole measure of an *in rem* forfeiture's excessiveness is the relationship between the forfeited property and the offense. [Citation.] We do not rule out the possibility that the connection between the property and the offense may be relevant, but our decision today in no way limits the Court of Appeals from considering other factors in determining whether the forfeiture of Austin's property was excessive." *Austin*, 509 U.S. at 623 n.15, 125 L. Ed. 2d at 506 n.15, 113 S. Ct. at 2812 n.15.

Since the *Austin* decision, the lower courts have had numerous opportunities to develop an excessiveness test. While at least two courts have adopted Justice Scalia's relationship test (*United States v. One Parcel Property Located at 427 & 429 Hall Street* (M.D. Ala. 1994), 842 F. Supp. 1421, 1423; *United States v. One Parcel Property Located at 9638 Chicago Heights, St. Louis, Missouri* (E.D. Mo. 1993), 831 F. Supp. 736, *rev'd on other grounds* (8th Cir. 1994), 1994 U.S. App. LEXIS 14672 (in *dicta,* the Eighth Circuit Court of Appeals rejected the

district court's "relationship" analysis as being inadequate)), the overwhelming majority of lower Federal courts have determined that the eighth amendment requires a broader scope of analysis. See, *e.g.*, *United States v. One Parcel of Real Property, Located at 9638 Chicago Heights, St. Louis, Missouri* (8th Cir. 1994), 1994 U.S. App. LEXIS 14672; *United States v. 6625 Zumirez Drive* (C.D. Cal. 1994), 845 F. Supp. 725, 732; *United States v. Real Property Located at 24124 Lemay Street* (C.D. Cal. 1994), 1994 U.S. Dist. LEXIS 8381; *United States v. A Parcel of Realty Commonly Known as Rural Route 1, Mound Road in Joliet, Illinois* (N.D. Ill. 1994), 1994 U.S. Dist. LEXIS 6433; *United States v. Certain Real Property Located at 2408 Parliament, Sterling Heights, Macomb County, Michigan* (E.D. Mich. 1994), 1994 U.S. Dist. LEXIS 11041; *United States v. One Parcel of Property Located at Shelly's Riverside Heights Lot X* (M.D. Pa. 1994), 851 F. Supp. 633.

We now join the growing number of courts which have adopted a multifactor analysis of the excessiveness issue. Whether a forfeiture constitutes an excessive fine cannot turn exclusively on the relationship between the forfeited property and the offense. Such a test is patently inadequate and necessarily conflates the eighth amendment excessive fine analysis with the determination of whether the property is subject to forfeiture in the first instance. (*United States v. One Parcel of Real Property, Located at 9638 Chicago Heights* (8th Cir. 1994), 1994 U.S. App. LEXIS 14672 at *8.) In this court's opinion, the eighth amendment excessive fines analysis demands a broader scope of inquiry and any satisfactory analysis must contain some measure of proportionality.

Having surveyed the relevant case law, we find a three-prong test emerging in the lower Federal courts to be the most appropriate starting point of review. Under this test, the court must weigh:

"(i) the inherent gravity of the offense compared with the harshness of the penalty; (ii) whether the property was an integral part of the commission of the crime; and (iii) whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use." (*United States v. Real Property Located at 6625 Zumirez Drive* (C.D. Cal. 1994), 845 F. Supp. 725, 732.) It is our belief that "the multifactor test enunciated here will give renewed significance to the Eighth Amendment's Excessive Fines Clause and will have the added benefit of checking the government's potential for abusive use of the civil forfeiture statutes." *Real Property Located at 6625 Zumirez Drive*, 845 F. Supp. at 735.

While we adopt the basic outline of this three-part test, we emphasize that the trial court is not precluded from considering factors not specifically listed. The inherent case-by-case nature of these drug forfeiture actions precludes simple cookbook application of any method of review.

Turning to the case at bar, we note that the Supreme Court decision in *Austin* post-dated the trial court order below. Thus, the trial court understandably did not feel compelled to perform an excessive fine analysis. Nonetheless, *Austin* does apply to this case (see *James B. Beam Distilling Co. v. Georgia* (1991), 501 U.S. 529, 115 L. Ed. 2d 481, 111 S. Ct. 2439 (equity and *stare decisis* require courts to apply a rule of Federal law retroactively when the case announcing the rule applied it retroactively)) and we remand with instructions for the circuit court to expressly consider and determine the excessive fine issue.

## C. Double Jeopardy

Defendant's final contention is that the forfeiture of his truck constituted a violation of the double jeopardy clause. This issue, however, was not raised by defendant in either the trial court or the appellate court. Issues not raised and argued before a lower court are consid-

ered waived and cannot be argued for the first time on appeal to this court. (*Meyers v. Kissner* (1992), 149 Ill. 2d 1.) Accordingly, we decline the invitation to speculate as to what extent the forfeiture in this case implicates the double jeopardy clause.

### III. Conclusion

Given the foregoing, the judgments of the appellate and circuit courts are reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded.*