THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. $5,970 UNITED STATES CURRENCY, Defendant (Maurice Hood, Claimant-Appellant).

Second District   No. 2—95—0483

Opinion filed May 1, 1996.

584

Robert P. Ritacca, of Ritacca & Potkonjak, of Waukegan, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers, of State's Attorneys Appellate Prosecutor's Office and Lisa Anne Hoffman, Assistant Attorney General, of counsel), for the People.

JUSTICE COLWELL delivered the opinion of the court:

Claimant, Maurice Hood, appeals the circuit court's order forfeiting $5,970 pursuant to section 505(a)(5) of the Illinois Controlled Substances Act (Act) (720 ILCS 570/505(a)(5) (West 1994)). Claimant contends that (1) the trial court's order was against the manifest weight of the evidence because he presented evidence rebutting the statutory presumption that the currency was furnished or intended to be furnished in exchange for drugs (725 ILCS 150/7(1) (West 1992)); (2) the trial court abused its discretion by ordering forfeiture of the currency where no nexus existed between the currency and the unlawful activity; and (3) the forfeiture of the currency violates the excessive fines clause of the eighth amendment of the United States Constitution (U.S. Const., amend. VIII). We affirm.

On March 18, 1994, the State filed a complaint for forfeiture. In the complaint, the State alleged that, on December 18, 1993, claimant possessed cocaine in violation of section 402 of the Act (720 ILCS 570/402 (West 1992)). The State further alleged that law enforcement officers seized $5,970 from claimant and that the currency was subject to forfeiture pursuant to section 505(a)(5) of the Act (720 ILCS 570/505(a)(5) (West 1994)).

On June 20, 1994, the trial court held a hearing on the complaint for forfeiture. Although there is no transcript of the hearing, the record on appeal does contain a certified bystander's report (155 Ill. 2d R. 323(c)). The relevant facts, taken from the bystander's report, are as follows. On December 18, 1993, Officer Todd Schmitz learned that claimant was driving a vehicle while his license was suspended. Officer Schmitz stopped the vehicle driven by claimant and arrested him for driving while his driver's license was suspended (625 ILCS 5/6—303(a) (West 1992)). Officer Schmitz then searched the vehicle, finding a "Twinkies" box on the passenger side front floorboard. One side of the box exposed a large amount of money totalling $5,970. Of-

ficer Schmitz testified that claimant said he did not know anything about the box. In addition, claimant did not protest when he took the money. A woman who said she was claimant's relative arrived at the scene, and claimant said to give her the money.

Officer Schmitz testified that, within inches of the currency on the floorboard, he found a plastic baggie containing a white rocky residue. Officer Schmitz also discovered a pager attached to the right pocket of claimant's pants and another plastic baggie with a small amount of white rocky residue in his left pocket. Field tests were performed on each of the white rocky substances, which tested positive for cocaine.

Officer Schmitz further stated that he saw claimant on March 25, 1994. At that time, claimant told Officer Schmitz that he "could care less about this money" and he had "more where that came from."

Detective Jay Tapia testified that he received a complaint concerning claimant from one of claimant's neighbors, Bob Osario. Osario told Detective Tapia that, at all hours of the night, people would knock on his door asking for "Bob" and asking if he was working. Officer Tapia testified that asking if a person is working is slang for "are you selling drugs?" and that claimant's nickname was "Bob." Osario would refer these individuals to claimant's residence. Osario also told Detective Tapia that automobiles would stop at claimant's home and that the vehicles' occupants would stay for only a few minutes. Osario noticed on the vehicles city stickers from different towns. Detective Tapia concluded from speaking to Osario that drugs were being sold from claimant's residence.

The State introduced a certified copy of claimant's conviction for possession of a controlled substance (720 ILCS 570/402 (West 1992)). Claimant was convicted pursuant to an *Alford* plea (*North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970)), and the conviction arose out of the same incident as the forfeiture proceeding.

Romino Rhyan testified that she was at the scene of the traffic stop and heard Officer Schmitz say that claimant was being arrested for traffic violations. The officer did not tell Rhyan anything about drugs, and she never saw a plastic baggie.

Claimant's mother, Effie Wroten, testified that claimant lived with her and that she did not know of any drugs being sold from her home. Wroten said that claimant sold her an automobile. In exchange for the automobile, Wroten gave claimant $6,000 in cash and a receipt. Wroten stated that the same day the seizure occurred, she went to the post office, got a receipt, and stamped the receipt with the date. Wroten also said that claimant gave her the vehicle's title,

although she never filed it. Wroten did not know how claimant paid for the vehicle or when he purchased it. However, she said she gave him the cash on that day because he needed the $6,000 to buy Christmas gifts.

Claimant testified that the seized currency belonged to him. Claimant said he never sold drugs at his mother's house and that he did not observe or know of any drugs being found in close proximity to the seized currency. Claimant stated that he sold an automobile to his mother and that his mother gave him the cash $1^1/2$ hours before it was seized. Claimant testified that he originally purchased the automobile from someone in McHenry for $7,000 and later sold it to his mother. Claimant could not recall where he went to purchase the vehicle or from whom he bought it. Although claimant stated that he procured the vehicle to fix it up, he admitted in interrogatories that he did not perform any mechanical work on it. Claimant stated that he earned between $500 and $700 a week working at New Image Hair Design. However, claimant admitted that he had no income in 1991, 1992, or 1993.

On December 29, 1994, the trial court ruled in favor of claimant and ordered that the currency be returned to him. The State filed a motion to reconsider on January 25, 1995. Upon reconsideration on February 17, 1995, the trial court reversed its prior ruling and ordered the currency forfeited. On March 16, 1995, claimant filed a motion to reconsider, which the trial court denied on April 13, 1995. This appeal ensued.

On appeal, claimant first contends that the trial court's ordering the forfeiture of the currency was against the manifest weight of the evidence. Specifically, claimant argues that he presented evidence rebutting the presumption that the currency was furnished or intended to be furnished in exchange for drugs (see 725 ILCS 150/ 7(1) (West 1992)).

■ Currency is subject to forfeiture if it is furnished or intended to be furnished in exchange for a substance in violation of the Illinois Controlled Substances Act or if it is proceeds traceable to such an exchange. 720 ILCS 570/505(a)(5) (West 1994). Accordingly, currency is subject to forfeiture when it is derived from the sale of illegal drugs. *People v. $52,204.00 United States Currency*, 252 Ill. App. 3d 778, 782 (1993). A presumption arises that currency was furnished or intended to be furnished in exchange for drugs when the currency is found in close proximity to forfeitable substances. 725 ILCS 150/7(1) (West 1992). The presumption may be rebutted by a preponderance of the evidence. 725 ILCS 150/7 (West 1992).

■ The State has the initial burden of showing probable cause for

the forfeiture of the property. 725 ILCS 150/9(G) (West 1992). During the probable cause portion of the forfeiture proceeding, the trial court must receive and consider all relevant hearsay evidence and information (725 ILCS 150/9(B) (West 1992)) and may rely on circumstantial evidence to assist in establishing probable cause (*$52,204.00 United States Currency*, 252 Ill. App. 3d at 782). If the State sufficiently proves the existence of probable cause, the burden shifts to the claimant to show by a preponderance of the evidence that his interest in the property is not subject to forfeiture. 725 ILCS 150/9(G) (West 1992).

In reaching its ruling in a forfeiture case, the trial court may draw reasonable inferences and reach conclusions to which the evidence lends itself. *People v. One 1990 Chevrolet Suburban, VIN 1GNER16K7LF1628*, 239 Ill. App. 3d 815, 817 (1992). In addition, the trial court, as the trier of fact, determines the credibility of the witnesses. *$52,204.00 United States Currency*, 252 Ill. App. 3d at 782. A reviewing court will not reverse a finding of forfeiture unless it is against the manifest weight of the evidence. *People ex rel. Waller v. $4,175 United States Currency*, 239 Ill. App. 3d 857, 861 (1993).

■ In the present case, Officer Schmitz testified that he discovered a baggie containing cocaine residue next to the box of currency on the floor of the vehicle driven by claimant. Officer Schmitz also found a baggie containing cocaine residue in claimant's pocket. Moreover, Detective Tapia testified concerning alleged drug dealing by claimant. By adducing evidence that the currency was found in close proximity to cocaine, the State effectively raised the presumption that the currency was furnished or was intended to be furnished in exchange for drugs. We conclude that the evidence presented by the State was sufficient to establish probable cause.

Since the State showed probable cause, the burden shifted to claimant to show by a preponderance of the evidence that his interest in the currency was not subject to forfeiture. In ruling on the State's motion to reconsider the order denying forfeiture, the trial court specifically found that claimant's innocent explanation for possessing the currency was not credible. Thus, the trial court concluded that the evidence presented by claimant did not overcome the statutory presumption and the State's evidence. Because the trial court did not believe the testimony of claimant or his mother, claimant did not rebut the presumption and did not prove that the currency was not subject to forfeiture. See *People ex rel. Daley v. Nine Thousand Four Hundred & Three Dollars, $9,403 in U.S.C.*, 131 Ill. App. 3d 188, 192 (1985).

The cases relied on by claimant are distinguishable from the

instant case. In *People ex rel. Waller v. 1989 Ford F350 Truck*, 162 Ill. 2d 78 (1994), the police searched the defendant, finding cocaine and $55.99 in his pocket. Our supreme court ruled that the defendant sufficiently rebutted the presumption related to proximity and, because the State introduced no evidence indicating the money was related to a drug transaction, ordered the reversal of the forfeiture of the $55.99. *1989 Ford F350 Truck*, 162 Ill. 2d at 84-85. In reaching its ruling, the court found that the defendant's contention that $55.99 was an amount normally carried on his person was credible. *1989 Ford F350 Truck*, 162 Ill. 2d at 85. The court further indicated that, because the amount of the currency was insignificant, it was not reasonable to infer that there was an integral connection between the currency and the drugs in spite of their proximity to each other. See *1989 Ford F350 Truck*, 162 Ill. 2d at 85.

The present case is distinguishable from *1989 Ford F350 Truck* because the trial court found that claimant's story was not credible. Furthermore, because of the large amount of currency and its proximity to the drugs in the present case, it is reasonable to infer that there was an integral connection between the two. See *1989 Ford F350 Truck*, 162 Ill. 2d at 85.

The case at bar also differs from the situation in *In re Fifty-Three Thousand Two Hundred Sixty-Three Dollars*, 159 Ill. App. 3d 114 (1987) (*In re $53,263*). In *In re $53,263*, the appellate court ruled that the defendant rebutted the statutory presumption related to proximity based on the trial court's specific finding that the defendant borrowed the seized currency from a finance company. *In re $53,263*, 159 Ill. App. 3d at 122. The appellate court reversed the trial court's order of forfeiture because the trial court misconstrued the role of the statutory presumption. See *In re $53,263*, 159 Ill. App. 3d at 125-26. In contrast, because the trial court in the present case found that claimant's story was not credible, claimant was unable to rebut the statutory presumption.

■ Next, claimant contends that there was no nexus or rational relationship between the currency and the unlawful activity. As stated previously, claimant failed to rebut the presumption that the currency was furnished in exchange for drugs. In addition, because of the large amount of currency and the currency's proximity to drugs, the trial court could properly infer that there was an integral connection between the currency and the drugs. See *1989 Ford F350 Truck*, 162 Ill. 2d at 85. We conclude that the evidence was sufficient to establish a nexus between the currency and the drugs.

In support of his contention, claimant cites *In re Twenty-Seven Thousand Four Hundred Forty Dollars*, 164 Ill. App. 3d 44 (1987) (*In*

*re $27,440).* In *In re $27,440,* the police stopped the claimant's husband for drunk driving. While searching the husband's vehicle, the police discovered a paper bag containing 969 bills of United States currency valued at $27,440. However, the police found no evidence of controlled substances in the vehicle. A forensic scientist conducted tests on the currency and determined that a residue on the bills contained cocaine. The residue was not visible to the naked eye and could have been on only one of the 969 bills. Although the State theorized that a drug transaction took place, the trial court determined that the State failed to prove a nexus between the currency and any illegal activity.

In affirming the trial court's ruling returning the currency to the claimant, the court stated that the legislature intended the statutory presumption concerning proximity to apply to situations where observable drugs or drug paraphernalia are found in close proximity to currency. *In re $27,440,* 164 Ill. App. 3d at 48. After recognizing that a presumption cannot be based on an inference where the undisputed facts give rise to different reasonable inferences, the court noted that the State did not establish where or when the bills came into close proximity with cocaine. *In re $27,440,* 164 Ill. App. 3d at 48. The court then concluded that the State failed to present sufficient evidence supporting its theory that a drug transaction had taken place and held that the evidence did not give rise to the statutory presumption. *In re $27,440,* 164 Ill. App. 3d at 48-49. Essentially, the court indicated that the statutory presumption did not apply where the amount of controlled substance was so small so as to be unobservable to the naked eye, the State was unable to adduce evidence of a drug transaction, and there were other reasonable inferences for the presence of cocaine on the bills besides the presumption that the currency was furnished in exchange for cocaine. See *In re $27,440,* 164 Ill. App. 3d at 48-49.

Unlike the situation in *In re $27,440,* the State in the case at bar presented evidence of drug dealing by claimant, and the police found an observable amount of cocaine in close proximity to the currency. The finding of a plastic baggie containing an observable amount of cocaine gave rise to the statutory presumption that the currency was furnished in exchange for a controlled substance. Claimant failed to rebut this presumption because his explanation was not credible. We distinguish *In re $27,440* from this case because the evidence in *In re $27,440* did not give rise to the statutory presumption.

Next, claimant argues that the forfeiture of the currency violates the excessive fines clause of the eighth amendment of the United States Constitution (U.S. Const., amend. VIII). The State responds

that an excessive fines analysis would be improper because the seized currency is akin to contraband *per se*. We reject the State's argument for the reasons that follow.

■ Contraband *per se* consists of property that is inherently illegal to possess. *People ex rel. Waller v. Seeburg Slot Machines*, 267 Ill. App. 3d 119, 129 (1994). The State need not return contraband *per se* to the owner even if the items were seized improperly. *People v. Braden*, 243 Ill. App. 3d 671, 679 (1993). Derivative contraband consists of property not inherently illegal but which is used in an unlawful manner. *Seeburg Slot Machines*, 267 Ill. App. 3d at 130.

The designation of property as contraband *per se* "means that the *mere possession of the item alone* constitutes the crime; it denotes an express public policy against the existence of the object, such as a sawed-off shotgun or counterfeit money, because the thing itself is repugnant to the State." (Emphasis in original.) *Braden*, 243 Ill. App. 3d at 679. Money is inherently legal and so is not contraband *per se* because the possession of money, by itself, is not a criminal offense. See *People v. Massey*, 219 Ill. App. 3d 909, 916 (1991). Accordingly, money is not contraband unless declared so because it is used unlawfully. *Braden*, 243 Ill. App. 3d at 679. Hence, money used in an unlawful manner is derivative contraband. See *People v. 1984 BMW 528E Automobile*, 208 Ill. App. 3d 930, 937 (1991).

In *Seeburg*, the court held that, if property is contraband *per se* and, thus, inherently illegal, a defendant has no right to that property and cannot argue that its forfeiture violates the eighth amendment's prohibition against excessive fines. See *Seeburg*, 267 Ill. App. 3d at 131. The court distinguished the facts in *Seeburg* from the situation in *Austin v. United States*, 509 U.S. 602, 125 L. Ed. 2d 488, 113 S. Ct. 2801 (1993). The *Seeburg* court recognized that, in *Austin*, the Supreme Court held that *in rem* forfeitures constitute punishments subject to the limitation of the excessive fines clause of the eighth amendment. *Seeburg*, 267 Ill. App. 3d at 131. The court noted that, in *Austin*, the United States sought the forfeiture of derivative contraband, the possession alone of which is not a criminal offense. *Seeburg*, 267 Ill. App. 3d at 131. Therefore, the court in *Seeburg* indicated that the forfeiture of derivative contraband implicates the excessive fines clause, while the seizure or forfeiture of contraband *per se* does not. See *Seeburg*, 267 Ill. App. 3d at 131.

■ In the present case, the currency was used in an unlawful manner because it was furnished or intended to be furnished in exchange for drugs. Thus, the seized currency is derivative contraband. Because the currency is not automatically subject to forfeiture as contraband *per se*, we must examine the forfeiture of the currency under the excessive fines clause.

In *1989 Ford F350 Truck,* our supreme court adopted a multifactor analysis of the excessive fine issue. Pursuant to this test, the court must weigh:

" '(i) the inherent gravity of the offense compared with the harshness of the penalty; (ii) whether the property was an integral part of the commission of the crime; and (iii) whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use.' " *1989 Ford F350 Truck,* 162 Ill. 2d at 90, quoting *United States v. Real Property Located at 6625 Zumirez Drive,* 845 F. Supp. 725, 732 (C.D. Cal. 1994).

■ In determining the inherent gravity of claimant's conduct, it is important to note that claimant pleaded guilty to possession of a controlled substance. A trial court may impose a fine of as much as $15,000 for a conviction of possession of even a small quantity of a controlled substance. See 720 ILCS 570/402(c) (West 1992). Because drug offenses pose a significant threat to individuals and society, a conviction of possession of cocaine is a serious offense. In evaluating the harshness of the penalty imposed on a claimant, society and the courts place a higher priority on real property than on personal property. *Real Property Located at 6625 Zumirez Drive,* 845 F. Supp. at 734. Therefore, the forfeiture of currency generally is not considered as harsh a penalty as the forfeiture of real property. Because of the seriousness of the offense and the fact that the subject property is currency, we conclude that the first factor weighs in favor of forfeiture.

Both the second and third factors embody an instrumentality or nexus test. Under an instrumentality test, the forfeited property must have a sufficiently close relationship to the illegal activity. *United States v. Real Property Located in El Dorado County at 6380 Little Canyon Road,* 59 F.3d 974, 982 (9th Cir. 1995). Although both factors concern the nexus between the forfeited property and the unlawful activity, in the case of the forfeiture of currency, the second factor has a much greater degree of relevancy than the third factor. In order to decide whether the property was an integral part of the commission of the crime, we must determine whether the currency and claimant's illegal activity are sufficiently interrelated to find the currency tainted by unlawful use. See *Real Property Located at 6625 Zumirez Drive,* 845 F. Supp. at 737. In the present case, a presumption arose that the currency was furnished or intended to be furnished in exchange for drugs. Exchanging the currency for drugs plainly indicates that the currency was an integral part of the commission of the crime. Thus, the perceptible connection between the currency and the illegal activity weighs strongly in favor of forfeiture.

After weighing the factors set forth by our supreme court in *1989 Ford F350 Truck*, we conclude that the forfeiture in this case did not violate the excessive fines clause of the eighth amendment.

We affirm the judgment of the circuit court of Lake County.

Affirmed.

DOYLE and RATHJE, JJ., concur.