NOTICE
Decision filed 09/22/16. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2016 IL App (5th) 150035

NO. 5-15-0035

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE *ex rel.* MATTHEW HARTRICH, State's Attorney of Crawford County, Illinois, | ) ) ) | Appeal from the Circuit Court of Crawford County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-MR-20 |
| 2010 HARLEY-DAVIDSON, | ) ) | |
| Defendant | ) ) | Honorable Christopher L. Weber, |
| (Petra Henderson, Claimant-Appellant). | ) | Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Justices Stewart and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal involves the application of the excessive fines clause of the eighth amendment in the context of our State's civil forfeiture provisions. The claimant, Petra Henderson, is the owner of a motorcycle valued at $35,000. Her husband, Mark Henderson, was arrested while driving the motorcycle and charged with aggravated driving while intoxicated and driving while his license was revoked. At the time of Mark's arrest, Petra was a passenger on the motorcycle. She appeals an order of the trial court finding the motorcycle subject to forfeiture. At issue is (1) whether the court

1

correctly determined that Petra consented to Mark's use of the motorcycle and (2) whether the forfeiture violated the excessive fines clause. We conclude that the evidence supports the court's finding that Mark used the motorcycle with Petra's consent. However, we find that the forfeiture violated the excessive fines clause, and we reverse on that basis.

¶ 2    Petra Henderson is the sole owner of a 2010 Harley-Davidson trike motorcycle. Her husband, Mark, does not have an ownership interest in the motorcycle. On the evening of April 25, 2014, Mark suggested to Petra that they go for a ride on the motorcycle. At the time, Mark's driver's license had been revoked due to a previous conviction for driving under the influence (DUI). Petra drove the motorcycle from the couple's home in Robinson, Illinois, to a tavern in Oblong, Illinois. She then drove to taverns in Lawrenceville and Palestine. Eventually, Petra drove to the Corner Place, which is located approximately 12 blocks from the Hendersons' home in Robinson. Petra did not drink any alcohol throughout the evening. Mark, however, had a lot to drink and was intoxicated by the time he and Petra left the Corner Place shortly after midnight.

¶ 3    Mark insisted on driving home from the Corner Place. According to both Mark and Petra, he jumped onto the motorcycle and told Petra that she could either ride home with him or walk home. She rode home with him. During the short drive home, Robinson police officer Dan Strauch activated his lights and siren to pull them over. Instead of stopping, Mark drove home and parked in the Hendersons' driveway. A breath test indicated that Mark's blood alcohol concentration (BAC) was 0.161. Officer Strauch placed Mark under arrest.

2

¶ 4    Mark was charged with aggravated DUI (625 ILCS 5/11-501(d) (West 2014)) and driving while his license was suspended or revoked (625 ILCS 5/6-303 (West 2014)).  He subsequently pled guilty to the charge of aggravated DUI, and the State dismissed the charge of driving while license revoked.

¶ 5    The State subsequently filed a request for preliminary review to determine probable cause for forfeiture, a verified complaint for forfeiture, and an amended verified complaint for forfeiture.  The State alleged that the motorcycle was used with the knowledge and consent of the owner in the offense of driving while license suspended or revoked and that it was subject to forfeiture because the revocation was due to a prior DUI conviction (625 ILCS 5/6-303(g) (West 2014)).  In addition, the State alleged that the motorcycle was used with the knowledge and consent of the owner in the offense of aggravated DUI during a time in which the driver's license was revoked due to a prior DUI conviction (720 ILCS 5/36-1(a)(6)(A)(i) (West 2014)).

¶ 6    The matter came for a hearing on December 3, 2014.  Officer Dan Strauch testified that he was on patrol in Robinson during the early morning hours of April 26, 2014.  At approximately 12:30 a.m., he heard a motorcycle revving its engine in the parking lot of the Corner Place Tavern.  He described the sound of the motorcycle as a "racing sound."  He turned around and saw a black 2010 Harley-Davidson trike making a "very wide" right turn onto Cherry Street.  Officer Strauch testified that the motorcycle then swerved, nearly hitting a telephone pole.  At this point, he followed the motorcycle and activated his lights to initiate a stop.  However, the motorcycle did not stop, so Officer Strauch also activated his siren.  He testified that the motorcycle continued

3

driving, weaving back and forth, for approximately 12 blocks. It then turned left, drove one more block, and pulled into a driveway.

¶7 Officer Strauch testified that Mark Henderson was driving the motorcycle and his wife, Petra, was a passenger. The officer further testified that Mark "had a strong odor of alcohol," poor balance, and slurred speech. Officer Strauch arrested Mark for DUI and then spoke with Petra. Petra indicated that she was aware both that Mark was intoxicated and that his license had been revoked. She also told Officer Strauch that she told Mark to stop but he did not do so. Officer Strauch acknowledged that Petra did not specifically tell him that she gave Mark permission to drive the motorcycle.

¶8 After Officer Strauch testified, the State rested, and Petra moved for a directed verdict. She pointed to the officer's testimony that Petra told him "that she asked [Mark] to stop, [and] that he didn't do so." She argued that this testimony demonstrated that she did not consent to Mark's use of the motorcycle. The State argued in response that the testimony should be construed to mean that Petra told Mark to stop "in response to the police officer attempting to stop the vehicle." The court denied the motion.

¶9 Mark testified next. He first described the events leading up to his arrest. He testified that he called Petra at work to ask if she wanted to go for a ride on the motorcycle. Petra came home from work later than Mark, so Mark took the motorcycle out of the garage before she arrived home. He then put the key fob used to start the motorcycle in his pocket. He explained that the motorcycle did not require the use of a key to start; rather, it could be started if the key fob was within 8 to 10 feet of the motorcycle. Mark testified that he kept the fob in his pocket the entire evening. When

4

asked why, he explained, "You just don't think about it. You put it in your pocket and go."

¶ 10　Mark was asked to describe the configuration of the seats on the motorcycle. He responded, "It's a two-seater, front and back, and with a trike, the passenger gets on first for comfortability [*sic*] of the driver getting on. If the driver would get on first, he would have to lean, she would have to lean way over for the passenger to get on."

¶ 11　Mark further testified that he and Petra left their home in Robinson at around 6 in the evening. They first drove to Oblong, Illinois. They next drove to Lawrenceville, then Palestine, and finally, to the Corner Place in Robinson. Mark testified that Petra drove to all those places. However, when they left the Corner Place, he asked Petra to let him drive the motorcycle. He testified that she refused, telling him that he did not have a valid license and that he was "too drunk." However, Mark testified, he jumped onto the motorcycle and started the engine. He testified that Petra again told him he could not drive, but he continued to rev the engine, and he told Petra that he was going to drive the motorcycle home and she could either get on the back seat or walk home. At this point, Petra got on the back seat.

¶ 12　On cross-examination, Mark was asked what, if anything, Petra did to try to stop him from driving the motorcycle. He testified that there was nothing she could do to stop him because he was stronger than her and had the key fob in his pocket.

¶ 13　Petra's testimony concerning the sequence of events was the same as Mark's. In addition, she testified that she did not have anything to drink that night. She emphasized

that she never consented to Mark driving the motorcycle. She explained that the only reason she rode home with Mark was she "just didn't want to walk home at that point."

¶ 14    Petra further testified that she was the sole owner of the motorcycle. She testified that she purchased it for $35,000 and she was still making payments on it. She stated that she had to continue to make payments after the motorcycle was seized. Petra testified that although she owned the motorcycle, Mark performed maintenance on it as a hobby. She acknowledged that when he worked on the motorcycle, Mark backed it out of the garage onto the driveway. She explained that she believed this was permissible for him to do because it did not involve driving on any public roadways. Finally, asked to explain why she did not ask Mark to give her the key fob, Petra stated that she did not think to do so. She explained that as long as they were together, she could start the motorcycle if the fob remained in Mark's pocket.

¶ 15    The court announced its ruling from the bench. The court stated as follows:

"The entire issue is whether Ms. Henderson gave consent to Mr. Henderson to drive this motorcycle, and it appears to me in this situation that actions speak louder than words. Had Ms. Henderson not got on and Mr. Henderson took off, it would be a lot easier for me to believe [their] testimony. However, as the State pointed out, it is self-serving testimony. She got on the motorcycle and they took off and the evidence is that they live about 12 blocks away so I don't think it would have been–it's not as if they were out on the interstate 50 miles from home where it would be impossible for her to find another way home, and so, therefore,

6

I doubt the testimony that has been presented by the claimants, and therefore I am going to find in favor of the State."

¶ 16 The court entered a written order for forfeiture later the same day. Petra subsequently filed a motion to reconsider, arguing both that the State failed to demonstrate that she consented to Mark's use of the motorcycle and that the forfeiture was excessive under the eighth amendment. The court denied the motion to reconsider. This appeal followed.

¶ 17 Petra first challenges the court's finding that she consented to Mark driving the motorcycle. In support of this claim, she argues that (1) the court erred in denying her motion for a directed verdict and (2) the court erred in finding that the act of getting on the back of the motorcycle constituted consent to Mark's driving. We reject both contentions.

¶ 18 Forfeiture is an *in rem* proceeding against an item used in the commission of certain enumerated offenses. The policy underlying our statutes allowing the forfeiture of vehicles is to prevent "certain types of crimes when such vehicles are used in their commission." *People v. 1998 Lexus GS 300*, 402 Ill. App. 3d 462, 465 (2010). A vehicle is subject to forfeiture if it is used with the knowledge and consent of the owner in the commission or attempted commission of certain offenses. 720 ILCS 5/36-1(a) (West 2014). Pertinent for our purposes, a vehicle is subject to forfeiture if it is used to commit the offense of DUI during a period of time in which the driver's license has been revoked or suspended due to a prior DUI. 720 ILCS 5/36-1(a)(6)(A)(i) (West 2014).

7

¶ 19    In this case, there was no dispute that the motorcycle was used in the commission of an offense that made it subject to forfeiture.  There was also no dispute that Petra had knowledge of this use.  The only factual question before the trial court was whether she consented to this use.

¶ 20    As with other factual determinations, it is the function of the trial court to assess the credibility of witnesses.  *People v. $5,970 United States Currency*, 279 Ill. App. 3d 583, 588 (1996).  In addition, the court may "draw reasonable inferences and reach conclusions to which the evidence lends itself."  *People v. One 1990 Chevrolet Suburban*, 239 Ill. App. 3d 815, 817 (1992).  We will reverse the trial court's factual findings only if they are against the manifest weight of the evidence.  *1998 Lexus*, 402 Ill. App. 3d at 465.

¶ 21    As previously stated, Petra's first argument is that the court erred in denying her motion for a directed verdict.  We disagree.  We first note that by presenting evidence after the court denied her motion, Petra forfeited her right to seek a directed verdict.  *Heastie v. Roberts*, 226 Ill. 2d 515, 544 (2007).  Moreover, we believe the court's ruling was correct.  A directed verdict is appropriate only if all of the evidence, viewed in the light most favorable to the nonmoving party, "so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand."  *Id*. (citing *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967)).  That standard was not met in this case.

¶ 22    Petra contends that she was entitled to a directed verdict at the end of the State's case-in-chief because up to that point, the State did not meet "its burden of proof that the motorcycle was used with the knowledge and consent of the owner, Petra Henderson."

8

Contrary to this argument, however, the State is only required to demonstrate that the motorcycle was used in the commission of an offense that makes it subject to forfeiture. 720 ILCS 5/36-2(d) (West 2014); *People v. 1991 Chevrolet Camaro*, 251 Ill. App. 3d 382, 386 (1993). Once the State establishes this fact, it is up to the owner of the vehicle to demonstrate that it was used without her knowledge or consent. 720 ILCS 5/36-2(e) (West 2014). Here, as noted, there was no dispute that the motorcycle was used in the commission of a DUI. Thus, the State met its initial burden.

¶ 23 More importantly, the evidence presented did not so overwhelmingly favor Petra that a contrary verdict could not stand. The fact that Petra rode as a passenger gave rise to a reasonable inference that she did consent to Mark's driving, and there was nothing in Officer Strauch's testimony that indicated Petra told him whether she gave Mark permission to drive the motorcycle. We find that the court correctly determined that Petra was not entitled to a directed verdict.

¶ 24 Petra's next argument is that the court erred in finding that her act of riding on the motorcycle as a passenger constituted consent. This argument mischaracterizes the court's finding. The court did not find that the act of riding on the motorcycle constituted consent as a matter of law. Rather, the court found that Petra's testimony was not credible, primarily due to the fact that she chose to ride on the motorcycle under the circumstances presented. As stated previously, credibility determinations are a matter within the province of the trial court (*$5,970 United States Currency*, 279 Ill. App. 3d at 588), and we will only reverse the court's factual findings if they are against the manifest weight of the evidence (*1998 Lexus*, 402 Ill. App. 3d at 465). Petra argued to the trial

9

court that she felt she had no choice but to ride home with Mark because no woman would want to walk 12 blocks home in Robinson after midnight. While this may be a reasonable explanation, the court was not required to believe it. We will not substitute our judgment for that of the trial court unless the evidence does not support the court's determination. *1990 Chevrolet Suburban*, 239 Ill. App. 3d at 817.

¶ 25   It is also worth noting that the court's credibility determination is supported by additional evidence. Mark testified that due to the configuration of the motorcycle, the passenger had to get on first. This contradicts Mark and Petra's claims that Mark jumped on the motorcycle before Petra. In addition, Mark had control of the key fob at the time of his arrest. Although the Hendersons offered an innocent explanation for this, testifying that Mark pulled the motorcycle out of the garage and that Petra could start the motorcycle as long as the fob was within close proximity of the motorcycle, the court could have reasonably inferred that Mark was holding the fob because Petra permitted him to drive the motorcycle. We conclude that the court's finding that Petra consented to Mark's use of the motorcycle was supported by the evidence.

¶ 26   We turn our attention to Petra's eighth amendment arguments. She argues that the forfeiture of the $35,000 motorcycle was constitutionally excessive under all the circumstances of this case. We agree.

¶ 27   The eighth amendment to the United States Constitution prohibits the government from imposing excessive fines as a form of punishment. *Austin v. United States*, 509 U.S. 602, 609-10 (1993). This prohibition is applicable in criminal proceedings and also in civil proceedings that " 'advance punitive as well as remedial goals.' " *Id*. at 610

10

(quoting *United States v. Halper*, 490 U.S. 435, 447 (1989)). It is applicable in civil forfeiture proceedings because such proceedings "serve, at least in part, to punish the owner of the property subject to forfeiture." *People v. One 2000 GMC*, 357 Ill. App. 3d 873, 875 (2005) (citing *Austin*, 509 U.S. at 618).

¶ 28 A forfeiture violates the excessive fines clause if it is grossly disproportionate to the gravity of the offense. *Id.* (citing *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). The Illinois Supreme Court has adopted a three-prong test to guide courts in determining whether a forfeiture is constitutionally excessive. Under this test, we consider:

> " '(i) the inherent gravity of the offense compared with the harshness of the penalty; (ii) whether the property was an integral part of the commission of the crime; and (iii) whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use.' " *People ex rel. Waller v. 1989 Ford F350 Truck*, 162 Ill. 2d 78, 89-90 (1994) (quoting *United States v. Real Property Located at 6625 Zumirez Drive*, 845 F. Supp. 725, 732 (C.D. Cal. 1994)).

These factors are not exclusive, and the inquiry must be conducted on a case-by-case basis. *Id*. at 90; *2000 GMC*, 357 Ill. App. 3d at 876. We review *de novo* the trial court's application of this constitutional test to the facts before it. *2000 GMC*, 357 Ill. App. 3d at 875.

¶ 29 We first note that, as Petra points out, the trial court did not explicitly discuss any of these three factors in its docket entry denying her motion to reconsider. The court did, however, cite the Appellate Court, Second District, decision in *2000 GMC* in support of

11

its conclusion that the forfeiture of Petra's $35,000 motorcycle was not constitutionally excessive. There, the appellate court upheld the forfeiture of a $28,000 vehicle used by its owner to commit the offenses of DUI and driving while license suspended. *2000 GMC*, 357 Ill. App. 3d at 874. As we will discuss in more detail next, there is a significant distinction between that case and the case before us–here, the offense was committed by someone other than the owner of the motorcycle. Although this fact alone is not always dispositive, for the reasons that follow, we find that a different result is warranted here. We turn our attention to the three factors.

¶ 30 The first factor requires us to weigh the gravity of the offense against the harshness of the penalty. In assessing the gravity of the offense, we must consider the fact that Mark was driving erratically and posed a potential threat to the safety of anyone who encountered him on the road that night. These public safety concerns elevate the seriousness of the offense of DUI "and arguably set it apart from other nonviolent offenses." *Id.* at 877. In light of these same concerns, Illinois courts have long recognized that driving with a revoked license is "one of the most serious driving offenses one can commit absent bodily injury when the underlying revocation stems from a DUI conviction." *1998 Lexus*, 402 Ill. App. 3d at 465 (citing *Reynolds v. Edgar*, 188 Ill. App. 3d 71, 75 (1989)).

¶ 31 We must also consider, however, the fact that Petra was not the person who committed the offense. This does not relieve Petra of responsibility under our forfeiture statutes; as discussed previously, civil forfeiture statutes are applicable to vehicle owners who knowingly consent to the use of their vehicles in the commission of crimes by

12

others.  See *Austin*, 509 U.S. at 615; 720 ILCS 5/36-1(a) (West 2014).  Nevertheless, we believe that in considering whether the forfeiture was excessive, the difference in culpability between an offender and an acquiescing vehicle owner must be taken into account.  We also believe that in nearly all cases, the acquiescing owner will be less culpable than the actual offender.

¶ 32    We find support for our holding in both federal and Illinois cases.  The United States Supreme Court explained in *Austin* that civil forfeiture as punishment for the misconduct of others is premised "on the notion that the owner has been negligent in allowing his property to be misused and that he is properly punished for that negligence." *Austin*, 509 U.S. at 615.  Federal courts have held "that it is the individual culpability of a claimant–i.e., the person who is actually punished by the [forfeiture]–which must be considered in the excessiveness analysis."  *United States v. Ferro*, 681 F.3d 1105, 1116 (9th Cir. 2012); see also *von Hofe v. United States*, 492 F.3d 175, 188-89 (2d Cir. 2007) (distinguishing between the interest in property subject to forfeiture of a husband who committed a drug offense and his wife, who "knowingly countenanced and allowed" the offense but did not participate).  Similarly, Illinois courts have held that a relevant consideration in assessing the gravity of the offense is whether the claimant–in this case, Petra–"was convicted, acquitted, or never charged with a criminal offense."  *2000 GMC*, 357 Ill. App. 3d at 876; *People ex rel. Waller v. 1996 Saturn*, 298 Ill. App. 3d 464, 471-72 (1998).

¶ 33    Here, Petra was not charged with DUI or driving while license revoked or any other criminal offense that would make the motorcycle subject to forfeiture.  For the

13

reasons discussed above, we find that her conduct was significantly less culpable than that of Mark. With this in mind, we will now consider the harshness of the penalty.

¶ 34    Obviously, one key factor in assessing the harshness of the penalty is the value of the forfeited property. See *2000 GMC*, 357 Ill. App. 3d at 876. This includes both the monetary value of the property and its intangible value. In this regard, courts have recognized that the forfeiture of real estate is a harsher penalty than the forfeiture of personal property, including vehicles. *Id*. Courts have also considered the impact of the forfeiture on the claimant in light of the claimant's circumstances. See *id*. at 878 (upholding a vehicle forfeiture but noting that it constituted a "severe penalty," particularly in light of the fact that the claimant was "a person of limited means and assets").

¶ 35    This case involves personal property, a $35,000 motorcycle, and there is no evidence in the record concerning Petra's general financial situation. However, the monetary value of the motorcycle alone is sufficient to make the forfeiture a harsh penalty. In *2000 GMC*, the case relied upon by the trial court, the Appellate Court, Second District, recognized that the forfeiture of a vehicle worth $28,000 was "undeniably a severe penalty." *Id*. We agree with that assessment, and we note that the value of the motorcycle at issue here is 25% higher than the value of the vehicle at issue there. Thus, we find that the penalty involved in this case is particularly harsh.

¶ 36    In weighing this harsh penalty against the gravity of the offense, we must also consider the remedial purposes of our forfeiture provisions, which is to keep impaired drivers off the roads of this state. See *1998 Lexus*, 402 Ill. App. 3d at 466-67; *2000*

14

*GMC*, 357 Ill. App. 3d at 878. Even considering this remedial purpose, we find the harshness of the penalty far exceeds the gravity of Petra's offense.

¶ 37    Before concluding that the penalty is grossly disproportionate to the offense, however, we must consider the second factor–whether the property was integral to the commission of the offense–and the third factor–whether use of the property in the commission of the offense was extensive spatially and/or temporally. Both of these factors "embody an instrumentality or nexus test." *$5,970 United States Currency*, 279 Ill. App. 3d at 592. Therefore, the question is whether the property at issue has "a sufficiently close relationship to the illegal activity." *Id.*

¶ 38    Petra concedes that the motorcycle was integral to Mark's offense of driving under the influence, and we agree. Driving a vehicle is an element of Mark's offense. See 625 ILCS 5/11-501 (West 2014). This factor therefore weighs in favor of forfeiture.

¶ 39    The third factor–whether the criminal conduct involving the motorcycle was extensive in time and space–concerns more than simply how long and how far Mark drove the motorcycle. It also concerns the question of "whether the property played an extensive or pervasive role in the commission of the crime." *1996 Saturn*, 298 Ill. App. 3d at 473 (citing *Zumirez Drive*, 845 F. Supp. at 734). Here, the property obviously played an extensive and pervasive role in the offense because, as just discussed, driving a vehicle is an element of the offense of DUI. However, because this fact underpinned our conclusion that the second factor favors forfeiture, a similar finding with respect to the third factor would be duplicative. Thus, we do not find this aspect of the third factor to be relevant in this case.

15

¶ 40    We briefly address the more obvious aspect of the third factor–the time and distance involved in Mark's offense of DUI.  As we discussed earlier, Mark drove the motorcycle 12 to 13 blocks from the Corner Place Tavern to the Hendersons' home.  This likely took only a few minutes.  Considering there is generally at least some movement involved in DUI, we do not believe this can be considered an extensive use of the vehicle in terms of time and/or spatial use.  Although we do not consider this factor to be particularly significant under the facts of this case, we find that it weighs slightly against forfeiture.

¶ 41    When we consider the three factors together, we find that the forfeiture of Petra's motorcycle was grossly disproportionate to her conduct.  As we discussed at length earlier, the harshness of the forfeiture significantly outweighed the gravity of Petra's conduct in acquiescing to Mark's use of the motorcycle.  Our consideration of the second and third factors does not alter this imbalance.  We therefore conclude that the penalty is constitutionally excessive under the eighth amendment.  For this reason, we reverse the trial court's order finding the motorcycle subject to forfeiture.

¶ 42    Reversed.

2016 IL App (5th) 150035
NO. 5-15-0035
IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE *ex rel.* MATTHEW HARTRICH, State's Attorney of Crawford County, Illinois, | ) ) ) | Appeal from the Circuit Court of Crawford County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-MR-20 |
| 2010 HARLEY-DAVIDSON, | ) ) | |
| Defendant | ) ) | Honorable Christopher L. Weber, |
| (Petra Henderson, Claimant-Appellant). | ) | Judge, presiding. |

**Opinion Filed:** September 22, 2016

**Justices:** Honorable Melissa A. Chapman, J.

Honorable Bruce D. Stewart, J., and
Honorable Judy L. Cates, J.,
Concur

**Attorney for Appellant**

Jon C. Anderson, Attorney at Law, 107 West Walnut Street, P.O. Box 203, Robinson, IL 62454

**Attorneys for Appellee**

Hon. Matthew Hartrich, State's Attorney, Crawford County Courthouse, 105 Douglas Street, Robinson, IL 62454; Patrick Delfino, Director, Stephen E. Norris, Deputy Director, Patrick D. Daly, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, 730 East Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864