THE PEOPLE *ex rel.* MICHAEL J. WALLER, Plaintiff-Appellee, v. 1996 SATURN, VIN 1G82H5282TZ113572, Defendant (Darrick Henderson, Claimant-Appellant).

Second District No. 2—97—0570

Opinion filed August 19, 1998.

RATHJE, J., dissenting.

Ligy J. Pullappally, Linda A. Rothnagel, and Bernard H. Shapiro, all of Prairie State Legal Services, Inc., of Waukegan, for appellants.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz, of

466

State's Attorneys Appellate Prosecutor's Office, of counsel), and Robert J. Morrow, of Elgin, for appellee.

JUSTICE THOMAS delivered the opinion of the court.

Claimant, Darrick Henderson, appeals the forfeiture of his vehicle, a 1996 Saturn, pursuant to section 36—1 of the Criminal Code of 1961 (the Code) (720 ILCS 5/36—1 (West 1996)). Claimant contends that (1) the forfeiture was not authorized by section 36—1, and (2) the forfeiture violated the excessive fines clause of the eighth amendment to the United States Constitution.

The facts underlying the action for forfeiture are as follows. On August 14, 1996, around 12:40 p.m., Sergeant Gary Bitler of the Round Lake Beach police department was stationed at a Super K mart parking lot in Round Lake Beach. While in the parking lot, Bitler observed a Saturn pull into the lot and park halfway between the Super K mart store and Sears Hardware. Bitler radioed Officer Richard Chirrello, who also was stationed in the parking lot, and told him about the Saturn. Bitler observed a man, later identified as Darryl Smith, get out of the car and walk by Sears Hardware. Several minutes later, Darryl exited Sears and walked back to the car with a square package hidden beneath his shirt. Darryl got into the car and a few minutes later a man later identified as Michael Smith got out of the car, got a bag from the trunk of the car, placed something in the bag, and then carried the bag back into Sears Hardware. A few minutes later Michael left Sears and walked back to the car, this time without the package.

After Michael got back into the car, Darryl and the claimant, Darrick Henderson, got out of the car and walked toward the Super K mart store. Bitler then went into Sears Hardware and spoke to the clerk. The clerk told Bitler that a man had just returned an item for $63.89 in cash. The man did not have a receipt for the item. The clerk also told Bitler that she was the only clerk working and that no one had purchased the item that day. The clerk later identified Michael Smith as the one who had returned the item.

Bitler then went back to the parking lot and saw claimant and Darryl Smith leave the Super K mart. Darryl had some things in his hand. Darryl and claimant got back into the car, at which time Darryl, Michael, and claimant got into an argument. Darryl then walked back to the Super K mart, and Michael and claimant drove away. At this point, Bitler stopped the car and advised Michael and the claimant that they were under arrest. Bitler later spoke with an employee of Super K mart, who identified the items in Darryl's possession as items taken from the store. Those items included a pair of blue shorts worth $17.99, a white shirt worth $9.99, and a Bulls cap worth $10.99.

Officer Chirrello also testified on behalf of the State and corroborated Bitler's testimony. Chirrello said that he arrested Darryl while Bitler arrested Michael and claimant. Chirrello then interviewed claimant following his arrest. Claimant told Chirrello that he and the others had a partnership and were in Round Lake Beach to take merchandise. Claimant was the spotter, which meant he looked to make sure no one saw his partners take the items. On other occasions, claimant was the driver. Chirrello asked claimant why he came to Round Lake Beach when there were other stores closer to him in Gurnee Mills or Hawthorne Center. Claimant told Chirrello that his card was punched at those stores. Claimant explained that when he returned an item without an I.D., he could only return it so many times, and then he had to sign a card to get the money returned. Claimant told Chirrello that it was easier to return things without a receipt in Round Lake Beach. Claimant also told Chirrello that the three argued that the money had not been split equally and that claimant and Michael then kicked Darryl out of the car.

Claimant then testified on his own behalf. He said that he was the owner of the 1996 Saturn seized by the Round Lake Beach police department. Claimant bought the car new for around $17,000 and paid cash for the difference between the amount of his trade-in and the purchase price.

Claimant testified that on the day he was arrested he was not employed and was living in his car. Claimant was on an excused absence from Motorola due to difficulty with drugs and alcohol. He claimed that on August 14, 1996, he was sleeping in his car. He awoke to find himself with Darryl Smith in the parking lot where he later was arrested. Claimant went into K mart to use the washroom. When claimant came out of the washroom, Darryl was right behind him and, when they walked back to the car, claimant saw Michael. An argument then ensued between Darryl and Michael, but claimant did not know what the argument was about. Darryl then left and Michael drove away, at which time claimant and Michael were arrested. Claimant denied that he told Chirrello any of the things to which Chirrello had testified. Claimant said at the time of his arrest he was not aware that Darryl and Michael had stolen anything, although he was aware that they were arguing over money. Claimant denied that he had a partnership with Darryl and Michael and denied that they had agreed to steal from stores and return the stolen items for cash. Claimant admitted that in the past he had returned items for Darryl and Michael but denied that he had been with them when the items were stolen.

The court found that Chirrello's testimony was generally credible and that the evidence was overwhelming that the car was used to fa-

cilitate burglaries. The car was used to get to and from the site of the robberies, and the car trunk was used to exchange the stolen property and to secrete the stolen property. The court did not find the claimant's testimony to be credible. Rather, the court held that the claimant knew the intended use of the car and was a participant in that use and that the use of the car was more than a mere incidental use. Accordingly, the State established the basis for the forfeiture of the vehicle. The court noted that the harshness of the penalty presented a closer question. However, the court concluded that, while the penalty was significant, it did not violate the excessive fine clause of the eighth amendment.

On appeal, claimant first contends that the trial court erred in finding that the forfeiture of his car was authorized by section 36—1 of the Code. Claimant argues that, pursuant to the plain language of the statute, his vehicle could not have been used in the commission of a burglary. Claimant contends that the crime of burglary, as defined by statute, is limited to the act of entering with the intent to commit a felony or theft and does not contain elements concerning the disposition of the stolen property or the concealment of the property. Consequently, because the act of burglary was committed when claimant and his partners entered Sears Hardware and K mart with the intent to commit a theft, claimant's vehicle was not used in the commission of a burglary.

■ ■ Claimant's argument is without merit. Section 36—1 of the Code provides that "[a]ny *** vehicle *** used with the knowledge and consent of the owner in the commission of, or in the attempt to commit *** an offense prohibited by (a) Section *** 19—1 [burglary] *** may be seized and delivered forthwith to the sheriff of the county of seizure." 720 ILCS 5/36—1 (West 1996). Section 19—1 of the statute states that "[a] person commits burglary when without authority he knowingly enters or without authority remains within a building *** with intent to commit therein a felony or theft." 720 ILCS 5/19—1 (West 1996). By including the offense of burglary in the list of crimes for which forfeiture is authorized, the legislature clearly contemplated a broader reading of the burglary statute than that proffered by claimant. Under claimant's reading of the statute, a vehicle could never be used in the commission of a burglary unless the burglar literally drove into a building. We decline to give the statute such a strained reading.

■ A review of the case law indicates that the phrase "used in the commission of [an offense]" means that the vehicle was an integral part of the crime. For example, in a case similar to the instant case, the supreme court upheld the forfeiture of the defendant's car on the ground that it was used in the commission of an armed robbery. *People*

*ex rel. Hanrahan v. One 1965 Oldsmobile*, 52 Ill. 2d 37 (1972), *rev'd on other grounds*, 409 U.S. 38, 34 L. Ed. 2d 47, 93 S. Ct. 30 (1972). In that case, the defendant and another man "stuck up" a food store, then got into a car and drove off. *One 1965 Oldsmobile*, 52 Ill. 2d at 39. The supreme court noted that "property whose intrinsic nature does not make it contraband *per se* may nevertheless be subject to confiscation depending upon its use." *One 1965 Oldsmobile*, 52 Ill. 2d at 43. The court concluded that the facts in the case established that the defendant's vehicle was an integral part of the crime, as it was used to facilitate the commission of a felony. *One 1965 Oldsmobile*, 52 Ill. 2d at 44.

Similarly, in *People v. Dugan*, 109 Ill. 2d 8 (1985), the defendants appealed the forfeiture of their car pursuant to section 36—1. The forfeiture complaint alleged that the car was used in the commission of a gambling offense. *Dugan*, 109 Ill. 2d at 16. The defendants' gambling convictions arose from their operation of a private club where patrons bet on card and dice games. *Dugan*, 109 Ill. 2d at 10. At the time it was seized, the car was found to contain playing cards, membership cards for the club, poker chips, gambling table covers, and $30,000 in cash. *Dugan*, 109 Ill. 2d at 17. The defendants denied that the car was used in the commission of an offense and argued that, at most, it was a repository for money that had been gambled. *Dugan*, 109 Ill. 2d at 17. The supreme court upheld the forfeiture of the car, finding that the use of the car as a mobile office or safe was sufficiently connected to the gambling activity to be considered to have been used in the gambling offense. *Dugan*, 109 Ill. 2d at 18.

Likewise, in *People ex rel. Carey v. 1975 Mercedes 4-Door*, 86 Ill. App. 3d 893 (1980), the trial court ordered the forfeiture of the defendant's vehicle pursuant to section 36—1, finding that the vehicle had been used in the delivery of a controlled substance. On seven occasions the claimant, a physician, had sold a controlled substance to an undercover agent from his office. *1975 Mercedes*, 86 Ill. App. 3d at 893. At the suggestion of the agent, the claimant agreed that the eighth transaction would occur outside his office and agreed to use his car trunk as a temporary depository for the substance prior to the sale. *1975 Mercedes*, 86 Ill. App. 3d at 893-94. When the claimant removed the drugs from the car trunk and gave them to the agent, he was arrested and his car was seized. *1975 Mercedes*, 86 Ill. App. 3d at 894.

On appeal, the claimant in the *1975 Mercedes* case contended that the use of the vehicle had been suggested by the agents and the only purpose the car had in the sale was to allow the agents to videotape the transaction, thus removing his car from the scope of the forfeiture

statute. *1975 Mercedes*, 86 Ill. App. 3d at 894. The appellate court disagreed, finding that the record showed that "the car was an integral, constituent part of the offense arising from the sale transaction." *1975 Mercedes*, 86 Ill. App. 3d at 894. Therefore, the use of the car fell within the scope of the forfeiture statute. *1975 Mercedes*, 86 Ill. App. 3d at 894.

■ These cases establish that, in order to show that the State is entitled to the forfeiture of a vehicle, it must show by a preponderance of the evidence that the vehicle was an integral part of and was connected to the underlying offense. The trial court properly construed the forfeiture statute to require such a showing for a forfeiture arising from the commission of a burglary. Moreover, the evidence in this case established that defendant's car was used to get to and from the site of the burglaries and that the car trunk was used to exchange the stolen property and to secrete the stolen property. The trial court found that this evidence was sufficient to establish that claimant's car was an integral part of the burglary offense. We agree with the trial court that forfeiture would be authorized in a case in which a claimant's car was used in the commission of a burglary. Our analysis, however, does not end there. We must next determine whether, as claimant contends in his second issue on appeal, the forfeiture of claimant's vehicle violates the excessive fine clause of the eighth amendment.

■ The Illinois Supreme Court has adopted a multifactor analysis of the excessive fine issue in forfeiture cases. In *People ex rel. Waller v. 1989 Ford F350 Truck*, 162 Ill. 2d 78, 89-90 (1994), the court held that the most appropriate starting point in the excessive fine analysis was a three-prong test set forth in *United States v. Real Property Located at 6625 Zumirez Drive*, 845 F. Supp. 725 (C.D. Cal. 1994). This test weighs the following factors:

> " '(i) the inherent gravity of the offense compared with the harshness of the penalty; (ii) whether the property was an integral part of the commission of the crime; and (iii) whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use.' " *1989 Ford F350 Truck*, 162 Ill. 2d at 90, quoting *Zumirez Drive*, 845 F. Supp. at 732.

■ Applying the multifactor test, claimant first alleges that the harshness of the penalty was excessive compared with the inherent gravity of the offense. Claimant argues that the forfeiture of his vehicle was an unconstitutionally excessive penalty for the theft of property worth less than $103. In response, the State contends that the basis for the forfeiture in this case was burglary, a felony punishable by a fine of $10,000 for each offense (730 ILCS 5/5—9—1(a)(1) (West

1996)). Because there were two separate burglary offenses, the total fine available was $20,000, which was not excessive compared with the value of claimant's vehicle ($17,000, minus depreciation).

Neither the claimant nor the State, however, has properly weighed the inherent gravity of the offense against the harshness of the penalty. Claimant's argument that this court should compare the value of his vehicle with the value of the goods taken misapprehends the inherent gravity analysis. The relevant issue in civil *in rem* forfeiture proceedings is not how much the confiscated property is worth but instead is whether the property has a close enough relationship to the offense. *United States v. 5307 West 90th Street*, 955 F. Supp. 881, 884-85 (N.D. Ill. 1996). Thus, the district court for the Northern District of Illinois has rejected a claim that the disparity between the forfeiture of a $110,000 home for a drug offense involving $14,000 worth of cocaine would constitute an excessive fine in violation of the eighth amendment. *5307 West 90th Street*, 955 F. Supp. at 884. We agree with the district court and reject an inherent gravity analysis that focuses on the value of the forfeited property versus the value of the stolen goods.

Similarly, the court in *Zumirez Drive* rejected an analysis that simply compared the maximum fine available for an offense with the claimant's equity interest in the forfeited property. *Zumirez Drive*, 845 F. Supp. at 732. In *Zumirez Drive*, such an analysis would have required the court to calculate a punishment for the claimant as if he had been convicted of a crime of which he actually had been acquitted. *Zumirez Drive*, 845 F. Supp. at 732. While the maximum punishment available for a crime may be relevant in a case where, as here, the evidence established the claimant's extensive participation in the offense that served as the basis of the forfeiture, we believe that this factor goes only toward weighing the gravity of the claimant's offense and cannot alone form the basis of the inherent gravity analysis. In fact, this approach has been utilized by this court in a case where the claimant in a forfeiture proceeding had been convicted of the offense that formed the basis of the forfeiture. See *People v. $5,970 United States Currency*, 279 Ill. App. 3d 583 (1996). In determining the inherent gravity of the claimant's conduct, this court found that the claimant's offense was serious, in part based upon the significant fine imposed for the offense. *$5,970 United States Currency*, 279 Ill. App. 3d at 592. Likewise, we find that the maximum fine available in this case is relevant to determine the seriousness of claimant's conduct, but does not alone determine whether the inherent gravity of claimant's conduct outweighs the harshness of the penalty.

In weighing the inherent gravity of an offense against the fine imposed, it has been accepted "that violent crimes are more serious

than nonviolent crimes, completed crimes are more serious than attempted crimes, and intentional conduct is more culpable than negligent conduct." *Zumirez Drive*, 845 F. Supp. at 733. In addition, because a civil forfeiture may be instituted without showing a claimant is guilty of any offensive conduct, a court should first determine into which category a claimant's conduct falls. *Zumirez Drive*, 845 F. Supp. at 733. These categories include situations where "(1) the claimant has been convicted of the criminal act or acts underlying the forfeiture; (2) the claimant has never been charged with any crime; and (3) the claimant has been charged and acquitted of the act or acts underlying the forfeiture." *Zumirez Drive*, 845 F. Supp. at 733. The gravity of a claimant's conduct decreases in each situation. *Zumirez Drive*, 845 F. Supp. at 733. It is easy for a court to evaluate the gravity of the offensive conduct in the first situation because the claimant did in fact commit the offense that formed the basis of the government's probable cause to forfeit the property. *Zumirez Drive*, 845 F. Supp. at 733.

In this case, claimant's crime was nonviolent, but it was completed and was intentional, thereby rendering the claimant's conduct more serious. Further, claimant was charged with burglary and was allowed to plead guilty to two counts of misdemeanor retail theft. The trial court found that the evidence was overwhelming that claimant's car was used to facilitate burglaries, that the claimant knew the intended use of the car, and that the claimant extensively participated in the use of the property in the commission of the offenses. Consequently, claimant's conduct fell within the first, most grave, category, because he did in fact commit the offense that formed the basis of the government's probable cause to forfeit the property.

Additionally, as noted by the State, burglary is a Class 2 felony punishable by a sentence of three to seven years' imprisonment (730 ILCS 5/5—8—1(a)(5) (West 1996)) and a fine of $10,000 for each offense (730 ILCS 5/5—9—1(a)(1) (West 1996)). Because there were two burglaries in this case, the maximum fine was $20,000. Therefore, the criminal penalties available for claimant's conduct also supported a finding that the claimant's offense was serious and that the forfeiture was not disproportionate to the severity of the offenses.

Finally, the court in *Zumirez Drive* suggested that in evaluating the harshness of the penalty against the fine imposed a court must consider not only the monetary value of the property forfeited but also the intangible value of the property. *Zumirez Drive*, 845 F. Supp. at 734. A higher value is placed on real property, particularly a home, than on personal property. *Zumirez Drive*, 845 F. Supp. at 734.

Here, the forfeited property was claimant's car, which was personal

property. Claimant argues that we should place a higher value on his car because he was homeless and living out of his car at the time of his arrest. Although we are cognizant of the hardship the forfeiture will cause claimant, we do not believe that hardship outweighs the gravity of claimant's conduct. Accordingly, we find that the first prong of the test weighs in favor of the forfeiture.

Claimant next argues that the second prong of the *Zumirez Drive* test weighs against the forfeiture of his vehicle. The second prong of the test focuses on whether the property was an integral part of the commission of the offense. The *Zumirez Drive* court looked to whether the property and the criminal activities were sufficiently interrelated to find the property tainted by unlawful use, thereby rendering the property forfeitable. *Zumirez Drive*, 845 F. Supp. at 737. Claimant argues that in evaluating this prong of the balancing test the trial court erroneously looked to whether his vehicle facilitated the offense, rather than whether the vehicle was an integral part of the offense.

We disagree. As noted above, in order to establish that it was entitled to the forfeiture of claimant's vehicle, the State had to show by a preponderance of the evidence that the vehicle was an integral part of and was connected to the underlying offense of burglary. The trial court held that the State had made such a showing, and we find nothing in the record to negate the trial court's finding. Accordingly, we find that the second prong of the *Zumirez Drive* balancing test also weighs in favor of the forfeiture of claimant's vehicle.

The third prong of the *Zumirez Drive* test is whether the criminal activity involving the claimant's vehicle was extensive in terms of time and/or spatial use. Under this factor, the court looks not only at whether the property was an integral part of the criminal activity but also whether the property played an extensive or pervasive role in the commission of the crime. *Zumirez Drive*, 845 F. Supp. at 734. Claimant argues that his vehicle does not satisfy this prong because it was only used on one occasion, for less than one hour.

Contrary to claimant's attempt to minimize the time and spatial use of his vehicle, the record in this case showed that claimant and his accomplices drove from the Waukegan area to Round Lake Beach because claimant could not return items without a receipt at stores closer to him. Claimant drove to Round Lake Beach intending to take merchandise, and claimant's vehicle was used to exchange the stolen merchandise between the parties and to hide the stolen merchandise. The burglaries would have been much more difficult to accomplish without claimant's vehicle. In addition, the trial court found that claimant's vehicle was being used in a theft ring, a conclusion which finds support in the record. While the actual burglaries at issue may

have taken less than an hour to accomplish, we find that the claimant's vehicle played an extensive and pervasive role in the commission of those burglaries. Further, our supreme court has stated that the "inherent case-by-case nature of *** forfeiture actions precludes simple cookbook application of any method of review." *1989 Ford Truck*, 162 Ill. 2d at 90. Accordingly, we find that the third prong of the balancing test also weighs in favor of the forfeiture of claimant's vehicle.

Applying the three-prong balancing test to the present case, then, we find that the trial court properly determined that the forfeiture of claimant's vehicle did not violate the excessive fines clause of the eighth amendment. We therefore affirm the trial court's finding in favor of the forfeiture.

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

BOWMAN, J., concurs.

JUSTICE RATHJE, dissenting:

I respectfully dissent. The forfeiture of claimant's vehicle was a violation of his eighth amendment right not to have an excessive fine imposed upon him.

Lost in the majority's extensive legal analysis is the fact that the actual crime committed by claimant involved the theft of items worth a little over $100. For that, he has lost his automobile and, very possibly, his chance to come to grips with the problems that led to the subject offense.

Further, the majority discounts claimant's contention that, in determining the intangible value of the property involved, a higher value should be placed on his car because he was homeless and living in it. The majority states that it is cognizant of the hardship caused by the forfeiture but that any hardship is outweighed by the gravity of the crime. When looking at the actual crime involved, I am hard-pressed to view the term "gravity" as having any relationship to this circumstance. Also, I would submit that few of us are fully cognizant of the hardship imposed upon a person by the forfeiture of the one piece of property that has any substantial monetary value to him.

The cases cited by the majority are instructive. *People ex rel. Hanrahan v. One 1965 Oldsmobile*, 52 Ill. 2d 37 (1972), involved a crime of violence, namely, armed robbery. In *People v. Dugan*, 109 Ill. 2d 8 (1985), when the subject vehicle was seized, it contained various

gambling materials and $30,000 in cash. The defendant in *People ex rel. Carey v. 1975 Mercedes 4-door*, 86 Ill. App. 3d 893 (1980), used his vehicle to deliver controlled substances.

Conversely, the instant offense is not a crime of violence. Nor does it involve large sums of money or narcotics trafficking. Indeed, when one considers the many criminal activities in which an automobile plays an integral part, one can hardly imagine a more petty offense involving a car than the instant one.

Moreover, the majority's conclusion will encourage an overzealous prosecutor to inflate charges against an unknowing defendant whose crime ostensibly involves an automobile and to later reduce the charges to fit correctly the crime in order to obtain the very type of forfeiture found here.

Finally, the ends of justice are not served by this result. Defendant pleaded guilty to two counts of misdemeanor retail theft and received his proper punishment for those acts. Unsatisfied with that just result, the State has now taken from claimant one of the very few means by which he could begin to rebuild his life.

This punishment does not fit the crime. It should be reversed.