FOURTH DIVISION

November 12, 2004

No. 1-02-3677

THE PEOPLE OF THE STATE OF ILLINOIS, )    Appeal from

) the Circuit Court

Plaintiff-Appellee, ) of Cook County.

)   

v. )  No. 02 CR 10048 

)

PAUL BORASH, )    Honorable

) Bertina E. Lampkin,

Defendant-Appellant. )  Judge Presiding.

JUSTICE THEIS delivered the opinion of the court:

Following a bench trial, defendant Paul Borash was convicted of child pornography and sentenced to six years in prison.  On appeal, he contends that (1) he was not proven guilty beyond a reasonable doubt where the statute requires proof of an exhibition of the “unclothed” genitals (720 ILCS 5/11-20.1(a)(1)(vii) (West 2000)), and the evidence submitted demonstrated the victim was clothed; (2) the statute violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, §11); (3) he was denied his right to a fair and impartial judge; and (4) the trial court erred in requiring him to forfeit his camera.  For the following reasons, we affirm the judgment of the circuit court in part and vacate in part.

BACKGROUND

The victim, K.N., an 11-year-old girl, testified that she was born on September 8, 1990, that she was going into the sixth grade and lived with her mother in Chicago.  Her mother, M.K., had been dating defendant for five years.  During that time, defendant had attended the victim’s birthday parties and was familiar with the victim and was aware of her age.  On June 9, 2000, M.K. asked defendant to watch the victim overnight.  Prior to that time, the victim had never spend the night alone with defendant.

While at defendant’s home, defendant asked the victim to put on some nude-colored stockings and her mother’s polka dot skirt.  When the victim asked defendant if she should put on underwear, he told her “no.”  Defendant then told the victim to sit on a chair with one leg over the arm of the chair.  The victim testified that her “privates” were showing.  He then told the victim to sit there while he took pictures of her.  The victim further testified that defendant asked her to get on the floor on her hands and knees and he photographed her from behind.  He also photographed her while on the couch.  The victim identified People’s Exhibits 1 through 18 as the photographs defendant took of her.

After taking the photographs, defendant brought the film to a Chicago drug store at Clark and Belmont Street to be developed.  Defendant identified himself on the film envelope as “Franklin.”  After the film was sent to the development laboratory for processing, Penny McCarthy, a customer service representative for the lab, found the photographs to be sexually explicit and turned them over to the Illinois State Police, who turned them over to the Chicago police department.  Officer Carol Mroczkowski reviewed the photographs with Assistant State’s Attorney Patti Ehsaei, and Ehsaei determined that they constituted child pornography.  Officer Mroczkowski subsequently contacted Janet Chattin, the supervisor of the drug store’s camera department, and informed her that film that had been dropped off at her store contained child pornography.  Chattin testified that she informed Officer Mroczkowski that while the name on the envelope was “Franklin,” she had been receiving telephone calls from a regular customer that she knew by defendant’s name.  He had been calling everyday looking for the photographs.  Officer Mroczkowski told Chattin that if defendant called again, to inform him that the pictures were lost and that she would contact him once they were located.  

On June 21, 2000, Officer Mroczkowski and other members of her unit set up a surveillance at the drug store.  On June 23, 2000, defendant entered the drug store and went directly to the camera counter.  Officer Mroczkowski observed defendant sign a piece of paper, receive the photographs and walk away from the counter.  Defendant was then arrested and the photographs were seized.  After he was advised of his rights and after he signed a waiver of rights form, he acknowledged that he took the photographs and identified the victim depicted in the photographs.  Defendant then gave consent to search his home and vehicle.  Officers recovered the polka dot skirt that the victim wore in the photographs, a pair of nude-colored stockings, and boxes of developed photographs from defendant’s home. The officers also recovered a camera, a camera case, and two rolls of undeveloped film in defendant’s vehicle.  

Defendant subsequently gave a handwritten statement to ASA Ehsaei.  Therein, defendant stated that he was giving his statement freely and voluntarily and that no threats or promises were made to him.  Defendant further stated that he was 40 years old, that he lived in Chicago and completed two years of college and could read and write English.  He dated the victim’s mother for four years and during that time he also spent time with the victim.  On June 9, 2000, while at his home, he asked the victim to change into nude-colored stockings and a black and white polka dot skirt.  The victim kept her own shirt on.  Defendant then told the victim not to put on her underwear because they were going to go swimming after he took pictures of her.  He told the victim to sit on a chair and pose with her legs open in order for him to see her vagina.  He asked and physically helped the victim to pose in numerous other positions all exposing her vagina and anus.  He took photographs of the victim in each of these positions exposing her vagina and anus so that he could become aroused and masturbate. 

Defendant further stated that on June 24, 2000, he took the roll of film to the drug store located at Clark and Belmont, and used the false name of “Franklin” when he dropped off the film.  He further stated that he knew the victim was only nine years old, that it was wrong for him to take the pictures of her exposed vagina and anus, and that he had no intention of performing any sexual act with the victim.  Defendant then identified all of the pictures that he took of the victim on June 9, 2000.  

The photographs taken by defendant were admitted into evidence.  It is undisputed that the photographs depict the victim in close-up shots of her vagina or buttocks, some with her legs spread open or on her hands and knees or lying on her back.  In these photographs, the victim is wearing a T-shirt, her mother’s skirt, and a pair of nude-colored stockings that are completely sheer in the crotch area and do not have any type of panel.  The victim’s vagina and buttocks are clearly visible through the nude stockings.  The trial judge noted that she could clearly see through the stockings.  The trial judge found defendant guilty of child pornography.  His motion for a new trial was denied and he was sentenced to six years in prison.  Defendant’s motion for reconsideration of sentence and motion for return of his camera was also denied.  He filed a timely appeal.

ANALYSIS

Defendant contends that he was not proven guilty of child pornography beyond a reasonable doubt because the statute requires proof of an “exhibition of the unclothed genitals”  (720 ILCS 5/11-20.1(a)(1)(vii) (West 2000)), and the victim was fully clothed in all of the photographs submitted at trial as evidence of the offense.  Specifically, defendant argues that the statute makes no provision for depictions of a child dressed in garments that are transparent, and here the victim was wearing nude-colored stockings.  

In addressing the sufficiency of the evidence to support a criminal conviction, the reviewing court determines whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Lamborn
, 185 Ill. 2d 585, 590, 708 N.E.2d 350, 353-54 (1999).  Here, however, to the extent we are asked to interpret the meaning of the statutory term “unclothed” (720 ILCS 5/11-20.1(a)(1)(vii) (West 2000)), we apply the 
de
 
novo
 standard of review to that determination.  
Lamborn
, 185 Ill. 2d at 590, 708 N.E.2d at 354. 

A person commits the offense of child pornography in Illinois by photographing any child whom the person knows or reasonably should know to be under the age of 18 where such child is 

“depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the 
unclothed
 genitals, pubic area, buttocks, or * * * breast of the child or other person.”  (Emphasis added.)  720 ILCS 5/11-20.1(a)(1)(vii) (West 2000). 

The term “unclothed” is not defined by the statute.  When a statute does not define a term, the court will assume that the word has its ordinary and popularly understood meaning.  
People v. Bailey
, 167 Ill. 2d 210, 229, 657 N.E.2d 953, 962 (1995).  The court should also consider the legislative intent and the context in which the language is used.  
In re Detention of Lieberman
, 201 Ill. 2d 300, 308, 776 N.E.2d 218, 223 (2002).  In determining the intent of the legislature, the court may properly consider not only the language of the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved.  Lieberman, 201 Ill. 2d at 308, 776 N.E.2d at 223.  

Webster’s dictionary defines the term “unclothed” to mean “not clothed” or “naked.”   Webster’s Third New International Dictionary 2485 (1986).  The word  “clothe” is further defined as “to cover,” which includes the meaning to “conceal (one’s body or a part of it) from view.”  Webster’s Third New International Dictionary 428, 524 (1986).  We also consider that the word  “unclothed” as utilized in the statute is an adjective modifying the words “genitals” and “buttocks.”  Thus, the question for our review is not whether the victim was unclothed generally, but whether the photographs depict the victim with her genitals or buttocks concealed from view.

Here, it is undisputed that while the victim is wearing stockings, they are completely transparent and the vagina is clearly visible and exposed.  Thus, despite the stockings, where the photographs do not conceal the vagina from view, a rational trier of fact could have found beyond a reasonable doubt that the photographs depict the “
unclothed
 genitals.” (Emphasis added.)  720 ILCS 5/11-20.1(a)(1)(vii) (West 2000).  Furthermore, we find that this definition fits within the child protection purpose of the statute and gives the word “unclothed” an appropriate meaning when placed in the context of the statutory requirement of a “lewd exhibition.”  To hold that the term “unclothed” as applied here must require proof that the victim was completely without clothes would negate the import of the statute and could not have been what the legislature intended.    

Nevertheless, even applying defendant’s chosen definition of “unclothed,” as meaning “naked,” we reach the same conclusion.  “Naked” may be defined as “inadequately or partially clothed esp[ecially] so as to be socially unacceptable.”  Webster’s Third New International Dictionary 1500 (1986).  This definition of “naked” has been applied in similar contexts as a proper definition given the purpose of the particular statute at issue.  See, 
e.g.
, 
People v. Foster
, 838 S.W.2d 60, 68 (Mo. App. 1992) (in context of child abuse statute, court held “this definition fits comfortably within the purpose of the statute, and thus, although not necessarily the complete statutory definition, it is a proper and acceptable definition”).  As applied here, a rational trier of fact could have found that the photographs reveal that the victim’s genitals were inadequately clothed so as to be socially unacceptable.

Defendant next contends that the sentence imposed for child pornography violates the proportionate penalties clause when compared to the sentence imposed for aggravated criminal sexual abuse.  A statute is presumed to be constitutional, and the party challenging a statute bears the burden of establishing its invalidity.  
People v. Graves
, 207 Ill. 2d 478, 482, 800 N.E.2d 790, 792 (2003).  This court has an obligation to construe a statute in such a manner as to uphold its constitutionality if it is reasonable to do so.  Whether the statute is constitutional will be reviewed
 
de
 
novo
.  
Graves
, 207 Ill. 2d at 482, 800 N.E.2d at 792.  

Article I, section 11, of the Illinois Constitution, commonly referred to as the proportionate penalties clause, provides in pertinent part that "[a]ll penalties shall be determined * * * according to the seriousness of the offense."  Ill. Const. 1970, art. I, §11.  Our supreme court has held that the proportionate penalties clause can be violated in one of three instances, namely, where (1) the penalty for an offense is cruel, degrading, or so completely disproportionate to the offense for which it is imposed as to shock the moral sense of the community; (2) similar offenses are compared and conduct that creates a less serious threat to public health and safety is punished more severely; and (3) the penalties imposed for identical offenses differ.  
People v. Moss
, 206 Ill. 2d 503, 522, 795 N.E.2d 208, 220 (2003).

In the present case, defendant asserts a violation of the second type.   When a defendant raises a challenge of this type, the court must apply a two-step cross-comparison analysis of the two statutes.  See 
People v. Hill
, 199 Ill. 2d 440, 455, 771 N.E.2d 374, 383 (2002).  First, the court must compare the offenses and determine whether they are sufficiently distinct such that proportionality review is inappropriate.  If the offenses do not have common or related purposes, a comparative proportionality review is inappropriate; when legislation defining criminal offenses is enacted for different purposes, we will presume that the legislature considered different factors in determining the appropriate penalties for the offenses and will defer to its judgment in this regard.  If, however, the purposes of the two offenses are related, the court must then determine whether the offense with the harsher penalty is more serious than the offense with the lesser penalty.  
Moss
, 206 Ill. 2d at 523, 795 N.E.2d at 221; 
Hill
, 199 Ill. 2d at 454, 771 N.E.2d at 383.  Accordingly, we must first determine whether the legislature had a common or related purpose when enacting the child pornography and aggravated criminal sexual abuse statutes.

 Pursuant to subsection (a)(4) of the child pornography statute, a person commits the crime of child pornography if he or she entices or solicits a child under the age of 18 to appear in any photograph in which the child is depicted or portrayed in any setting involving a lewd exhibition of the unclothed genitals.  720 ILCS 5/11-20.1(a)(4) (West 2000).  The penalty imposed for such an offense is a Class 1 felony with a mandatory minimum fine of $2,000 and is subject to a sentence of 4 to 15 years in prison.  720 ILCS 5/11-20.1(c) (West 2000); 730 ILCS 5/5-8-1(a)(4) (West 2000).  

A person commits the crime of aggravated criminal sexual abuse if the defendant is over the age of 17 and (1) commits an act of sexual conduct with a child under the age of 13; or (2) uses or threatens force to commit an act of sexual conduct with a child between 13 and 17 years old; or (3) if five or more years older than the victim, commits either an act of sexual penetration or sexual conduct with a child between 13 and 17 years old.  720 ILCS 5/12-16©)(1), 12-16(d) (West 2000).  “Sexual conduct” is defined as “any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of * * * any part of the body of a child under 13 years of age * * * for the purpose of sexual gratification or arousal of the victim or the accused.”  720 ILCS 5/12-12(e) (West 2000).  The penalty imposed for such an offense is a Class 2 felony, subject to a sentence of three to seven years in prison.  720 ILCS 5/12-16(g) (West 2000); 730 ILCS 5/5-8-1(a)(5) (West 2000).  

Defendant argues that subsection (a)(4) of the child pornography statute shares a common statutory purpose with subsections (c)(1) and (d) of the aggravated criminal sexual abuse statute because all three provisions aim to protect children from sexual exploitation.   The legislature has not explicitly stated its purpose in enacting these statutes; however, the plain language of the statute is the best indicator of legislative intent.  
People v. Koppa
, 184 Ill. 2d 159, 169, 703 N.E.2d 91, 97 (1998).  It is apparent on the face of the statute that the legislature’s purpose in enacting subsection (a)(4) was to ultimately prevent the production, dissemination and possession of sexually explicit materials that depict and exploit children.  See 
People v. Geever
, 122 Ill. 2d 313, 326 (1988) (purpose of the statute is to prevent the exploitation of children by “drying up” the market for child pornography).  

Whereas, essential to the aggravated criminal sexual abuse statute is the act of sexual conduct or sexual penetration.  
People v. Novak
, 163 Ill. 2d 93, 115, 643 N.E.2d 762, 773 (1994).  Thus, the focus of subsections (c)(1) and(d) is to “proscribe sexual contact between the unwary minor and the unscrupulous elder.”  
People v. Gann
, 141 Ill. App. 3d 34, 35, 489 N.E.2d 924, 925 (1986).  See also 
People v. Reed
, 148 Ill. 2d 1, 9, 591 N.E.2d 455, 458 (1992) (purpose of section 12-16(d) of the aggravated criminal sexual abuse statute is to protect children “from the consequences of premature sexual experiences.”)
.   While both statutes seek to protect children from sexual exploitation, the focus of subsection (a)(4) of the child pornography statute is on eradicating the materials that record the sexual exploitation rather than on prohibiting the inappropriate contact by sex offenders.  Accordingly, because the statutes have distinct purposes, we must presume that the legislature considered different factors in establishing the penalties for these offenses and defer to its judgment.  
People v. Lombardi
, 184 Ill. 2d 462, 480, 705 N.E.2d 91, 101 (1998).  Therefore, a comparative proportionality analysis is not appropriate.

Nevertheless, even if we were to construe the statutes as having a common statutory purpose, we find that defendant has not met his burden of establishing that the offense with the harsher penalty is less serious than the offense with the lesser penalty.  In 
New York v. Ferber
, 458 U.S. 747, 73 L. Ed. 2d 1113, 102 S. Ct. 3348 (1982), the United States Supreme Court specifically noted that child pornography is a more serious crime than sexual abuse:  

“‘[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution.  Because the child’s actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place.  A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.”  
New York v. Ferber
, 458 U.S. at 759 n.10, 73 L. Ed. 2d at 1124 n.10, 102 S. Ct. at 3355, n.10, quoting Shouvlin,
 Preventing the Sexual Exploitation of Children: A Model Act
, 17 Wake Forest L. Rev. 535, 545 (1981).

The Court in 
Ferber
 also observed “[i]n recent years, the exploitive use of children in the production of pornography has become a serious national problem” and that child pornography has become a highly organized, multimillion dollar industry operating on a nationwide scale.  
Ferber
, 458 U.S. at 749 n.1, 73 L. Ed. 2d at 1117 n.1, 102 S. Ct. at 3350 n.1.  Additionally, the Supreme Court has noted that child pornography is often used as a tool to seduce children who are otherwise reluctant to engage in sexual conduct.  
Osborne v. Ohio
, 495 U.S. 103, 112 n.7, 109 L. Ed. 2d 98, 110 n.7, 110 S. Ct. 1691, 1697 n.7 (1990).  

Thus, the legislature has perceived a need to enact a more stringent penalty provision under subsection (a)(4) of the child pornography statute to halt the increase in the commission of the offense and to deter the long-term effects of child pornography on the child victims.  Accordingly, where it cannot be said that subsections (c)(1) and (d) of the aggravated criminal sexual abuse statute (720 ILCS 5/12-16(c)(1),(d) (West 2000)) are more serious offenses than subsection (a)(4) of the child pornography statute (720 ILCS 5/11-20.1(a)(4) (West 2000)), there is no violation of the proportionate penalties clause of the Illinois Constitution.  

Defendant next contends that he was denied his right to trial before a fair and impartial judge where, in ruling on his motion for a directed finding of not guilty, the trial judge improperly prejudged defendant’s guilt.  While defendant failed to raise this issue at trial or in a posttrial motion, when the claimed error involves judicial conduct “the practical difficulties involved in objecting to the trial court’s conduct compel a less rigid application of the waiver rule.”  
People v. Stevens
, 338 Ill. App. 3d 806, 810, 790 N.E.2d 52, 55 (2003).  Accordingly, we will address the merits of defendant’s claim.

After the State rested its case, defendant made a motion for a directed finding and the trial court denied that motion without comment on the record.  Defendant then rested without presenting any evidence and the parties proceeded to closing arguments.  Defendant stated that his closing argument would not be “directed toward the evidence.  I think we can pretty much agree to the evidence that was presented.  My argument goes to the statutory consequence of the charges here * * *.”  After closing arguments, the trial court stated in pertinent part:

“Certainly at the time the State rested their case in chief when counsel made a motion for directed verdict I had made a decision the State had proved their case beyond a reasonable doubt, otherwise I would have directed them out.  At the close of all of the evidence, again my position has not changed.  The charge is child pornography.  The State has proven the charge * * *.”

Defendant cites 
People v. Connolly
, 322 Ill. App. 3d 905, 915-16, 751 N.E.2d 1219, 1227 (2001), in support of his argument that the trial judge prejudged his guilt.  In 
Connolly
, the defendant argued that, upon a motion for a finding of not guilty at the close of the State’s case in a bench trial, the State should have a higher burden of proof than in a jury trial.  Defendant argued that the trial court should enter a finding of not guilty when the evidence does not establish defendant’s guilt beyond a reasonable doubt without considering the evidence in a light most favorable to the State.  
Connolly
, 322 Ill. App. 3d at 914, 751 N.E.2d at 1226-27.  The court rejected defendant’s argument, and instead reaffirmed the standard to be applied by the trial court in ruling on a defendant’s motion for a directed finding in a bench trial or jury trial.  The court held that 
a motion for a directed verdict of not guilty asks “whether the State's evidence 
could support
 a verdict of guilty beyond a reasonable doubt, not whether the evidence 
does in fact support
 that verdict." (Emphasis in original.)   
Connolly
,
 322 Ill. App. 3d at 915, 751 N.E.2d at 1227
.  

In essence, defendant now makes the opposite argument from the defendant in 
Connolly
, maintaining that it was error for the trial judge to apply a higher burden of proof on the State than is required under 
Connolly
.  The record in the present case reveals that, in testing the constitutional sufficiency of the evidence as a matter of law, the trial judge found that there was more than enough evidence to support a guilty verdict.  After closing arguments, she rendered her findings as a trier of fact, detailing her observations and conclusions about the content of the photographs under an objective standard.  Merely finding at the close of the State’s case that the State had more than met its burden of proof, as a matter of law, did not strip defendant of his presumption of innocence, and does not alone constitute evidence of an unfair and partial fact finder.    

We further find defendant’s cited case of 
People v. Stevens
, 338 Ill. App. 3d 806,  790 N.E.2d 52 (2003), 
distinguishable where the court held that the defendant 
was denied his fundamental right to make a proper closing argument.  Here, defendant was given a full opportunity to make an extensive closing argument without interruption.  Indeed, defendant stated that his closing argument would not be “directed toward the evidence.  I think we can pretty much agree to the evidence that was presented.  My argument goes to the statutory consequence of the charges here * * *.”  Accordingly, where defense counsel did not raise any disputed issues of fact in closing, there is no evidence that the trial court ultimately prejudged defendant before all of the disputed issues of fact were presented.  For all of the foregoing reasons, we find no error.

We next consider defendant’s argument that he was deprived of his right to a fair and impartial sentence because the trial judge considered improper factors in aggravation, including the offensiveness of defense counsel’s strategy.  Defendant takes issue with the trial judge’s statements during the sentencing hearing in which she indicated that she had not heard an apology from defendant, was offended by his horrendous attitude in painting himself as the victim, and declared that he “should be taken out and beaten.”

 It has long been held by our supreme court that before reversing a sentence imposed by the trial court, it must be clearly evident that the sentence was improperly imposed.  
People v. Ward
, 113 Ill. 2d 516, 526, 499 N.E.2d 422, 425-26 (1986).  The imposition of a sentence is a matter of judicial discretion, and absent an abuse of that discretion, the sentence imposed by the trial court will not be altered on review.   
People v. Perruquet
, 68 Ill. 2d 149, 368 N.E.2d 882 (1977).  The trial judge must consider all matters reflecting upon the defendant’s personality, propensities, purposes, tendencies, and indeed every aspect of his life relevant to the sentencing proceeding.  
Ward
, 113 Ill. 2d at 527, 499 N.E.2d at 426.    

 In rendering an appropriate sentence, the trial court may consider defendant’s credibility, demeanor and character.  
People v. Streit
, 142 Ill. 2d 13, 19, 566 N.E.2d 1351, 1353 (1991).   Here, the trial judge was offended by both defense counsel and defendant’s attitude during sentencing.  Defense counsel repeatedly argued that defendant was the victim, stating that defendant was going to lose his business, his home, and that the punishment in prison would be “demonstratively far worse than anything we could or the court could indicate that’s happened to the victim.”  

Defendant argues that during allocution, he distanced himself from defense counsel’s “poor judgment.”  Initially, we note that he was represented by counsel and it was not inappropriate for the trial judge to consider counsel’s argument in mitigation in fashioning an appropriate sentence.  Furthermore, during allocution, defendant himself made several comments construing himself as the victim.  He stated:  

“I don’t know what the hell is going to happen to me.  I have no idea.  It scares the hell out of me, believe me, I’m terrified.  I did my best to move on.  This will always be with me for the rest of my life.  I will never, ever live this down.”

Additionally, he stated that his actions “cost [him] in terms of friendship and everything [he had] ever worked so hard for.”  He also stated: 

“These past two years have been devastating to me.  I’ve never done anything like what I did to [the victim] before.  It’s never happened.  It has never happened in the two and a half years since.”  

It was appropriate for the trial court to consider both counsel’s comments and defendant’s own attitude in focusing on the impact that the offense had on him rather than the impact it had on the victim.     

 Nor do we find that the trial court misapprehended the record.  While defendant made an apology, admitted that he had a problem and admitted that he violated the victim’s trust, the quality and extent of a defendant’s remorse is a proper subject for consideration.   
People v. McDade
, 219 Ill. App. 3d 317, 332, 579 N.E.2d 1173, 1184 (1991).   Here, while defendant stated that he apologized, the trial court questioned his sincerity and credibility in light of his painting himself as the victim stating,  “Your expressions of remorse are insufficient.  That is the way I feel.  Totally and completely insincere.”  It is not for this court to reweigh the trial judge’s observations regarding defendant’s credibility and demeanor. 

Moreover, while defendant argues that the trial judge’s other comments were hostile and impacted his sentence, the reviewing court should not focus on a few words or statements of the trial court.  Rather, the court must consider the entire record as a whole.  
Ward
, 113 Ill. 2d at 526-27, 499 N.E.2d at 426.  Based upon the totality of the court’s comments, the judge considered appropriate factors in aggravation and mitigation.  The judge noted that “[s]ociety demands and our legislators recognize this is a tremendous problem of child pornography and what it can do.” She also considered that defendant had “absolutely no record whatsoever” and sentenced defendant to only two years above the minimum sentence.  Accordingly, the record reflects that the trial court did not abuse its considerable discretion in imposing a statutorily authorized six year sentence.      

Lastly, defendant argues that the trial court erred in ordering the forfeiture of his camera where the State failed to comply with the forfeiture proceedings set forth in section 36-2 of the Criminal Code of 1961 (the Code) (720 ILCS 5/36-2 (West 2000)).  Following defendant’s conviction and sentencing for child pornography, defense counsel presented a motion for the return of the camera that was seized from defendant’s vehicle in order to allow his parents to sell the camera to recoup some of the expenses incurred for the defense of his case.  After a hearing on the motion, and after reviewing the forfeiture provisions of the child pornography statute, the trial court ordered the camera to be confiscated and denied defendant’s motion for return of the property.

Section 11-20.1(e) of the child pornography statute specifically authorizes the seizure and forfeiture of materials and equipment used in committing child pornography and provides that such property “shall be seized and forfeited in the manner, method and procedure provided by Section 36-1 of this Code for the seizure and forfeiture of vessels, vehicles and aircraft.”  720 ILCS 5/11-20.1(e) (West 2000).  Section 36-1 addresses the seizure of the property and incorporates by reference the forfeiture procedures set forth in section 36-2.  
People v. Wade
, 326 Ill. App. 3d 396, 402, 760 N.E.2d 491, 495 (2001).  Section 36-2 of the Code provides that the State’s Attorney shall file a complaint in the circuit court, give notice to the owner of the property of the proceedings, and establish at a hearing by a preponderance of the evidence that the property was “used in the commission of an offense described in Section 36-1.”  720 ILCS 5/36-2 (West 2000).  In construing the statutes, we note the general rule that forfeitures are not favored and that the law is to be narrowly construed to avoid injustice.  
Wade
, 326 Ill. App. 3d at 402, 760 N.E.2d at 495.    

Here, the proceedings did not comply with the article 36 requirements.  The State never instituted a forfeiture proceeding by filing the appropriate complaint.  More importantly, the State never established by a preponderance of the evidence that the camera was used in the commission of the offense.  As Justice Thomas stated in 
People ex rel. Waller v. 1996 Saturn, VIN 1G82H5282TZ113572
, 298 Ill. App. 3d 464, 699 N.E.2d 223 (1998), “in order to show that the State is entitled to the forfeiture of [the property], it must show by a preponderance of the evidence that the [property] was an integral part of and was connected to the underlying offense.”  
Waller
, 298 Ill. App. 3d at 470, 699 N.E.2d at 226.  

At the hearing on the motion to return the camera, the trial judge recalled that there were  photographs presented in aggravation that had been taken of the victim.  These photographs had been developed from film found in the camera that was seized from defendant’s vehicle.  Nevertheless, the record reveals that there was no evidence that the photographs presented in aggravation were an integral part of the underlying offense for which defendant was convicted.  Additionally, no evidence was ever presented that the photographs entered into evidence at trial, and used to convict defendant of child pornography, were taken using the camera seized by police.  Accordingly, where the State did not institute a forfeiture proceeding and failed to set forth by a preponderance of the evidence that the camera seized by police was an integral part of the underlying offense, the order of forfeiture must be vacated.  
Wade
, 326 Ill. App. 3d at 402, 760 N.E.2d at 496.

For the foregoing reasons, the judgment of the circuit court is affirmed in part and vacated in part.

Affirmed in part; vacated in part.       

QUINN, J., concurs.

REID, P.J., dissents.

      

PRESIDING JUSTICE REID, dissenting:

I dissent.  “A criminal or penal statute is to be strictly construed in favor of the accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute.”  
People v. Effler
, 349 Ill. App. 3d 217, 219 (2004), citing 
People v. Laubscher
, 183 Ill. 2d 330, 337 (1998).  “Any ambiguity in a penal statute must be resolved in favor of the defense.”  
Effler
, 349 Ill. App. 3d at 219, citing 
People v. Whitney
, 188 Ill. 2d 91, 98 (1999).  As the majority points out, “[a] person commits the offense of child pornography in Illinois by photographing any child * * * depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the 
unclothed
 genitals *** of the child or other person.”  Slip op. at 5-6, quoting 720 ILCS 5/11-20.1(a)(1)(vii) (West 2000) (emphasis in original).  The legislature specifically chose the word “unclothed” which the majority recognizes carries the primary meanings of “not clothed” or “naked.”  Slip op. at 6, quoting Webster’s Third New International Dictionary 2485 (1981).  The majority writes that “it is undisputed that while the victim is wearing stockings, they are completely 
transparent
 and the vagina is clearly visible and exposed.”  Slip op. at 6 (emphasis added).  The photographs in this record do not support the use of the word “transparent.”  Though the child’s vagina is clothed in translucent pantyhose, it is clothed.  The legislature has chosen to criminalize photographs depicting the unclothed genitals.  In its attempt to buttress the statute and its oversight of not contemplating a situation with translucent clothing such as this, the majority has extended the term “unclothed” to include clothing which fails to sufficiently “conceal” that which lay underneath.  I believe this to be both a tortured construction of the statute and a result-oriented attempt to legislate from the bench.  Unclothed means “without clothing.”  Although what the defendant allegedly did might be repugnant to most people, the child in this case had clothing covering her genitals.  I do not believe it is a court’s place to include covered genitals in the definition of “unclothed genitals.”  That is for the legislature.  Therefore, the conviction must be reversed.